STATE OF HAWAII, Plaintiff-Appellee, *v.* RICHARD IAN DeMILLE, Defendant-Appellant

NO. 12499

(DISTRICT COURT NO. TRP-23 OF 8/6/87)

OCTOBER 11, 1988

BURNS, C.J., HEEN AND TANAKA, JJ.

## OPINION OF THE COURT BY TANAKA, J.

This is an appeal from a bench trial conviction for the offense of driving under the influence of intoxicating liquor (DUI) in violation of Hawaii Revised Statutes § 291-4(a)(2) (1985).[1] Defendant Richard Ian DeMille (Defendant) contends that the trial court reversibly erred in admitting the blood test results into evidence because the State failed to show strict compliance with pertinent provisions of Chapter 111 of Title 11 of the Administrative Rules of the State Department of Health.[2] We hold that a sufficient foundation was laid for the admission of the blood test results into evidence. We therefore affirm the conviction.

I.

Defendant was arrested for DUI and transported to the Kaneohe Police Station. After he consented to a blood test, Defendant was taken to the Pawaa Annex of the City and County of Honolulu Health Department (Health Department) for testing.

Emily Chang (Chang), a medical technologist at the Pawaa Annex, administered the blood test. At the trial, Chang testified that she had a Bachelor of Science degree from the University of Hawaii, had been a medical technologist with the Health Department for about thirteen years, was certified by the State Department of Health to conduct chemical analysis to determine blood alcohol concentration, had been qualified as an expert in blood serum analysis by Hawaii courts over fifty times, and had been trained by a supervisor of the Health Department in the field of ethanol methodology. Chang also testified as to the procedure she followed

---

[1] Hawaii Revised Statutes (HRS) § 291-4(a)(2) (1985) provides:

Driving under influence of intoxicating liquor. (a) A person commits the offense of driving under the influence of intoxicating liquor if:

\* \* \*

(2) The person operates or assumes actual physical control of the operation of any vehicle with 0.10 per cent or more, by weight of alcohol in the person's blood.

[2] Chapter 111 of Title 11 of the Administrative Rules is entitled "Testing of Blood, Breath and Other Bodily Substances for Alcohol Concentration" and is referred to as the "Rules" in this opinion.

in drawing two vials of blood from Defendant's arm, and testing the blood specimen for alcohol concentration.

Chang used the "direct distillation method" in her analysis of Defendant's blood alcohol concentration. Under this method, a spectrophotometer was utilized as a measuring device. Chang testified that before the test was run she calibrated the spectrophotometer with three reference samples of known ethanol levels and a blank. Additionally, Chang used a homium oxide filter to calibrate the spectrophotometer "to see that the machine was working at the wave-length it was supposed to work at." Transcript at 50. Chang testified that the spectrophotometer was working accurately.

Over Defendant's objection, the trial court admitted into evidence the test results, which indicated that Defendant's blood alcohol concentration was 0.18 per cent, and found him guilty of DUI. Defendant timely appealed.[3]

## II.

In *State v. Souza*, 6 Haw. App. 554, 732 P.2d 253 (1987), a DUI case involving a breath test result, we stated:

[I]n meeting the foundational prerequisites for the admission of the Intoxilyzer test result there must be a showing of strict compliance with those provisions of the Rules which have a direct bearing on the validity and accuracy of the test result.

*Id.* at 559, 732 P.2d at 257 (footnote omitted).

Relying on *Souza*, Defendant asserts that there was no showing by the State of strict compliance with § 11-111-5(d)(1) and § 11-111-5(j)(1) of the Rules. Defendant therefore concludes that the trial court erred in admitting the blood test results in evidence. We disagree.

---

[3] Defendant was also found guilty of operating a vehicle either 30 minutes before sunrise or 30 minutes after sunset and failing to use headlights in violation of HRS § 291-25(a) (1985). This conviction was not appealed.

A.

Section 11-111-5(d) (hereinafter § 5(d) ) of the Rules reads in relevant part as follows:

> (d) For the purposes of the department's approval, the method of analysis shall be capable of meeting the following performance standards:
>
> (1) Analyzing control or reference samples containing 0.05, 0.100, 0.200 per cent W/V of ethanol in alcohol free whole blood containing appropriate preservatives to acceptable standards as denoted in section 11-111-5(a)(4)(C). Control or reference samples shall be prepared to concentrations within plus or minus ten per cent.

* * *

> (4) Acceptable standards shall be:
>
> (A) The apparent ethanol concentrations of the blank (alcohol free) sample shall not exceed 0.01 per cent W/V.
>
> (B) The average of the standard deviations from the analyses of three reference samples does not exceed 0.005 per cent W/V.
>
> (C) The systematic error of the analysis of the 0.05 per cent W/V reference sample does not exceed plus or minus ten per cent.
>
> (D) The systematic error of the analyses of the 0.100 and 0.200 per cent W/V reference sample does not exceed plus or minus five per cent.

Although § 5(d)(1) refers to "section 11-111-5(a)(4)(C)," there is no such section in the Rules. Defendant therefore contends that "the State could not show strict compliance with standards which had not been promulgated."

Our answer to Defendant's contention is twofold. First, the reference to "section 11-111-5(a)(4)(C)" in § 5(d)(1) is an inadvertent typographical error. This court may therefore correct it by substituting the proper section intended by the State Department of Health (Department), which promulgated the Rules.

The general principles of statutory construction also apply to the construction of administrative rules. *Mahiai v. Suwa,* 69 Haw. ____, ____, 742 P.2d 359, 366 (1987) (citation omitted). The substitution of one word for another in an act is permitted "where it is obvious that the word used in the act is the result of clerical error, where the substitution will make the act sensible, give it force and effect, or make it rational[.]" 2A N. Singer, Sutherland Statutory Construction § 47.36 at 253 (4th ed. 1984) (footnotes omitted). *See also State ex rel. Stephan v. Martin,* 230 Kan. 747, 641 P.2d 1011 (1982); *National Council of Compensation Ins. v. New Mexico State Corp. Comm'n,* 103 N.M. 707, 712 P.2d 1369 (1986); 73 Am. Jur. 2d *Statutes* § 201 (1974).

A reading of § 5(d) of the Rules indicates that the "acceptable standards" regarding reference samples referred to in § 5(d)(1) are covered in § 5(d)(4). It is clear that the Department intended to refer to "section 11-111-5(d)(4)" instead of "section 11-111-5(a)(4)(C)" in § 5(d)(1). Accordingly, we substitute "section 11-111-5(d)(4)" for "section 11-111-5(a)(4)(C)" in construing § 5(d)(1) of the Rules.

Second, § 5(d) specifically states that it applies to the Department's approval of methods of analysis. However, § 11-111-5(h) of the Rules provides in part:

Currently approved methods of blood alcohol analysis are:

(1) Direct distillation method;

(2) Gas Chromatograph;

(3) Enzymatic Method;

(4) Diffusion Method (microdiffusion and oxidation).

The blood alcohol analysis method used by Chang was the direct distillation method, which had already been approved. Therefore, § 5(d)(1) is not applicable in this case.

B.

Section 11-111-5(j)(1) (hereinafter § 5(j)(1) ) of the Rules states:

(j) Calibration, maintenance, and repair of instruments and related accessories of distillation, enzymatic, and diffusion

methods employed pursuant to this chapter shall comply with the following:

> (1) The laboratory director or laboratory supervisor shall insure that calibration is done[.]

Defendant argues that "[s]ince it is the responsibility of the laboratory director or laboratory supervisor, not a medical technologist, to insure that calibration is done pursuant to 11-111-5(j), and no testimony was elicited from either the laboratory director or supervisor, there was an insufficient foundation for introduction of the blood test results." In our view, this argument extends the strict compliance requirement to a ridiculous extreme.

We agree with Defendant that § 5(j)(1) places the responsibility of insuring calibration of instruments on the laboratory director or supervisor. However, § 5(j)(1) does not require the director or supervisor to calibrate the instruments personally.

In the case at hand, medical technologist Chang testified that she properly calibrated the spectrophotometer as required by § 5(j). Chang's testimony on calibration of the instrument was the best evidence that the calibration was done, rather than the testimony of the laboratory director or supervisor, who did not do the work. It could be reasonably inferred from Chang's testimony that the director or supervisor insured the calibration of the spectrophotometer by virtue of the Pawaa Annex laboratory's general operating procedure which Chang, the medical technologist, followed.[4] Testimony of the director or supervisor regarding the calibration of the spectrophotometer was superfluous and unnecessary.

### III.

Accordingly, we hold that based on the record there was strict compliance with the pertinent provisions of the Rules and a sufficient foundation was laid for the admission of the blood test results into evidence.

---

[4] Medical technologist Chang testified, "It's part of our procedure that before we run the test on the D.U.I.'s we would do the calibration for the machine." Transcript at 38.

We therefore affirm the DUI conviction.

*Noah D. Fiddler* for defendant-appellant.

*Vickie L. Silberstein,* Deputy Prosecuting Attorney, for plaintiff-appellee.