No. 91-013

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991



IN THE MATTER OF THE PROPOSED
DISCIPLINARY TREATMENT OF THE
OCCUPATIONAL VETERINARIAN'S
LICENSE OF JEFFREY C. PEILA,
LICENSE NO. 9302.


APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Dorothy McCarter, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Charles F. Moses; Moses Law Firm, Billings, Montana

        For Respondent:

        Robert P. Verdon, Montana Department of Commerce,
        Helena, Montana

---

                        Submitted on Briefs:   May 16, 1991

                                  Decided:   July 9, 1991

Filed:

                        Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, Dr. Jeffrey C. Peila, appeals from a judgment of the District Court of the First Judicial District, Lewis and Clark County, which affirmed a final order of the Board of Horse Racing, an agency of the Montana Department of Commerce. In its order, the Board granted summary judgment against the appellant and suspended his license to practice veterinary medicine at Montana racetracks for two years. It also fined him $1,000. We affirm.

We restate the issues raised by the appellant as follows:

1. Do the Board's medication and veterinary regulations constitute a valid delegation of legislative authority?

2. Are the Board's findings of fact supported by substantial evidence and are its conclusions of law correct?

3. Did the Board properly grant summary judgment?

The appellant is a licensed and practicing veterinarian, having been granted a license to practice veterinary medicine in clinics and as part of a farm or ranch practice by the Board of Veterinary Medicine, Montana Department of Commerce. In addition, prior to the commencement of the current proceedings, he held a separate license with the Board of Horse Racing permitting him to practice veterinary medicine on animals at race tracks in the State of Montana.

During the 1987 horse racing season, the pertinent regulations of the Board of Horse Racing read as follows:

ARM 8.22.1401(18) Any traine[r], groom, owner, veterinar-

2

ian, or other person found to be responsible for administering or permitting to be administered to any horse entered to be raced, any forbidden substance as shown by the test and/or analysis of the approved chemist shall be subject to a fine, suspension or both. No veterinarian shall be subject to any penalty for administering any substance insofar as he . . . has informed the owner, trainer, or other person requesting the treatment of the name, dosage and probable effect of the medication used. (Emphasis added.)

. . .

ARM 8.22.1501(11) No person shall improperly tamper or attempt to tamper with any horse in such a way as to affect his speed in a race, nor shall he counsel or in any way aid or abet such tampering. (Emphasis added.)

On October 3, 1987, a horse named Mr. Squeaky Ruler raced at MetraPark Fairgrounds in Billings, Montana. After the race, the horse was subjected to a urinalysis examination pursuant to the rules of the Board of Horse Racing. The results of the examination revealed that Mr. Squeaky Ruler had a Schedule 5 narcotic painkiller called Buprenorphine in his system during the running of the race. As a result of this test, a license discipline contested case was instituted by the Board of Horse Racing against the appellant. On June 6, 1988, the Board issued to the appellant a Notice of Proposed Action and Opportunity for Hearing (License Discipline). The Notice alleged that the appellant administered medications to Mr. Squeaky Ruler and two other racehorses without informing the owner, trainer or person requesting the treatment of the name, dosage, and probable effect of the medications used, in violation of ARM 8.22.1401(18). The Notice also alleged that the administration of the medications to the racehorses amounted to

3

improperly tampering, or attempting to tamper, or abetting in the tampering, with a horse in such a way as to affect its speed in a race, in violation of ARM 8.22.1501(11). The Notice was subsequently amended in response to objections raised by the appellant to add the language "knowingly and intentionally" to reflect the appellant's state of mind when he administered the medications.

On June 22, 1988, the appellant responded to the Notice by requesting a hearing before the Board and appropriate time for discovery. Thereafter, a hearing examiner was appointed to the case by the Board. The record shows that, on July 22, 1988, as part of the discovery process, the appellant requested information from the Department of Commerce regarding witnesses, documentary evidence and scientific evidence that the Department claimed supported the allegations in the Notice. The Department responded to the discovery requests on August 2, 1988.

On September 1, 1988, the appellant filed a motion for summary judgment setting forth the legal bases upon which dismissal of the proceedings should be granted. No action was taken on the motion at this time. Discovery continued; the Department noticed up the depositions of the appellant as well as two other veterinarians, Dr. James H. Bailey and Dr. Richard Richardson.

On March 18, 1989, after the appellant was deposed but before Dr. Bailey and Dr. Richardson were deposed, the appellant filed a second motion for summary judgment. It set forth substantially the same grounds for dismissing the proceedings as contained in

4

the appellant's initial motion for summary judgment.

After Dr. Bailey and Dr. Richardson were deposed, the Department filed its own motion for summary judgment on June 27, 1989. The Department asserted that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law regarding the offenses alleged in the Notice. Both parties briefed their motions for summary judgment and orally argued their positions to the hearing examiner on August 25, 1989. Thereafter, the hearing examiner issued proposed findings of fact, conclusions of law, and order granting summary judgment against the appellant. The appellant then submitted written objections to the hearing examiner's ruling.

On November 30, 1989, the Board of Horse Racing heard oral argument by counsel for the parties. In an order dated February 9, 1990, the Board issued its findings, conclusions, and final order upholding the ruling of the hearing examiner. Specifically, the Board found that on October 3, 1987, the appellant injected the racehorse Mr. Squeaky Ruler with the drug Buprenorphine a few hours before the horse was to run in a race and that the appellant injected Mr. Squeaky Ruler and two other racehorses with the same drug on several other occasions. All three racehorses were trained by Don Lewis of Blackfoot, Idaho. It further found that each time the drug was administered, the appellant failed to inform the trainer of the name of the drug, the amount of dosage, or its probable effect on the horse. In addition, the Board found that

5

the drug was administered with the intent to affect the speed and performance of the horses during their races. The Board concluded that the appellant administered the injections in violation of ARM 8.22.1401(18) and ARM 8.22.1501(11). The Board granted summary judgment against the appellant and suspended his license to practice veterinary medicine at Montana racetracks for two years. It also fined him $1,000.

On February 28, 1990, the appellant petitioned the District Court of the Thirteenth Judicial District, Yellowstone County, for judicial review of the Board's final order pursuant to the provisions of § 2-4-702, MCA. Shortly thereafter, the parties stipulated to a change of venue to the District Court of the First Judicial District, Lewis and Clark County. The District Court, after reviewing the record before the Board and the briefs and arguments of the parties, affirmed the Board's findings of fact, conclusions of law and final order on November 14, 1990. The appellant's subsequent motion to alter or amend the judgment was denied by the District Court on December 26, 1990. This appeal followed.

I.

Do the Board's medication and veterinary rules and regulations constitute a valid delegation of legislative authority?

The appellant contends that the Board's medication and veterinary regulations are invalid because the statutes authorizing

the Board to adopt rules and regulations governing horse racing, § 23-4-101 et seq., MCA, provide no standards or guidelines for the exercise of the authority sought to be delegated.

With respect to the validity of a delegation of power by the legislature to an administrative agency, this Court has stated as follows:

> If the legislature fails to prescribe with reasonable clarity the limits of power delegated to an administrative agency, or if those limits are too broad, its attempt to delegate is a nullity.
>
> On the other hand a statute is complete and validly delegates administrative authority when nothing with respect to a determination of what is the law is left to the administrative agency, and its provisions are sufficiently clear, definite, and certain to enable the agency to know its rights and obligations.

Milk Control Board v. Rehberg (1962), 141 Mont. 149, 161, 376 P.2d 508, 515, citing Bacus v. Lake County (1960), 138 Mont. 69, 354 P.2d 1056.

In Bacus, the enabling statutes provided authority for county and district boards of health to enact rules and regulations "pertaining to the prevention of disease and the promotion of public health" over their areas of jurisdiction. In holding that the statutes constituted an invalid delegation of legislative authority, this Court stated:

> We do not believe that this provision is sufficiently definite to lay down proper standards for the guidance of the agency. What did the legislature mean by "prevention of disease and the promotion of public health"?
>
> Does this only mean that the boards of health can make quarantine regulations, or could they go so far as to prescribe a series of physical exercises for the

populations within their areas for the promotion of public health? May these boards make rules and regulations concerning mental health, and birth control? . .

Bacus, 138 Mont. at 79, 354 P.2d at 1061. We further stated that:

> We recognize that there has been a relaxation of the requirement of specific standards and an allowance of more general standards for grants of power to administrative bodies in the area of police [power] regulation, including public health. . . . However, even in these areas we hold that there must be a more definite standard set out by the legislature than has been done in the case at bar.

Bacus, 138 Mont. at 82, 354 P.2d at 1063.

In our view, the enabling statutes at issue in the present case are distinguishable from those held to be invalid in Bacus. Section 23-4-104, MCA, authorizes the Board to "adopt rules to govern race meets and the parimutuel system." Unlike the statutes in Bacus, § 23-4-104, MCA, goes on to specify thirteen particular areas of the horse racing business which the legislature has determined to be in need of regulation. Those areas of regulation set forth in § 23-4-104, MCA, which are pertinent to the proceedings against the appellant include:

(4)   corrupt practices;

. . .

(6)   licensing of all personnel who have anything to do with the substantive operation of racing; [and]

. . .

(8)   the veterinary practices and standards which must be observed in connection with race meets;

. . .

8

These statutory provisions give the Board definite instructions as to what particular areas of the horse racing business require regulation; as such, they are sufficient to enable the Board to know its rights, obligations and duties. Accordingly, we hold that the Board's medication and veterinary rules and regulations constitute a valid delegation of legislative authority.

In a related argument, the appellant contends that the enabling statutes and the Board's regulations are unconstitutionally vague in that neither contain any provisions describing the "state of mind" required to establish a violation of any of the Board's regulations. Citing State v. Austin (1985), 217 Mont. 265, 704 P.2d 55 and other authority, he maintains that the requisite state of mind must be contained in the regulations in order to provide notice of what type of conduct is prohibited and when the state of mind is not set forth, the regulation is "unworkable and unconstitutional." We disagree.

State v. Austin, cited by the appellant, was a criminal case. Courts have uniformly treated disciplinary actions by administrative agencies as civil in nature. Pence v. Idaho State Horse Racing Comm'n (Idaho App. 1985), 705 P.2d 1067, 1069 (citing cases). As the Idaho Court of Appeals stated in Pence, incidental resemblances and analogies to criminal proceedings do not alter the inherently civil nature of such administrative proceedings. Pence, 705 P.2d at 1069.

This Court addressed the question of vagueness in Rierson v.

9

State (1980), 188 Mont. 522, 614 P.2d 1020. We stated that a statute violates due process for vagueness when the language used does not sufficiently define the required conduct and persons of common intelligence must necessarily guess at its meaning. Rierson, 188 Mont. at 526, 614 P.2d at 1023. General principles of statutory construction also apply to construction of administrative rules. State v. DeMille (Haw. App. 1988), 763 P.2d 5.

The statutes and regulations pertinent to the present case are not unconstitutionally vague. The conduct prohibited is specifically and clearly stated in the pertinent regulations. ARM 8.22.1401(18) provides that:

> Any traine[r], groom, owner, veterinarian, or other person found to be responsible for administering or permitting to be administered to any horse entered to be raced, any forbidden substance as shown by the test and/or analysis of the approved chemist shall be subject to a fine, suspension or both. No veterinarian shall be subject to any penalty for administering any substance insofar as he . . . has informed the owner, trainer, or other person requesting the treatment of the name, dosage and probable effect of the medication used. (Emphasis added.)

In addition, ARM 8.22.1501(11) states:

> No person shall improperly tamper or attempt to tamper with any horse in such a way as to affect his speed in a race, nor shall he counsel or in any way aid or abet such tampering. (Emphasis added.)

Section 23-4-202(3), MCA, expressly provides that the Board may suspend or revoke any license issued by the Department of Commerce and assess a fine, not to exceed $1,000, against a licensee who violates any provisions of Title 23, Chapter 4, or any rule or

10

order of the Board; in addition to the suspension or revocation and fine, the Board may forbid application for relicensure for a two-year period. The regulations enacted by the Board clearly define prohibited conduct to persons of common intelligence and the statute clearly sets out the sanctions for violation of Board regulations.

## II.

Are the Board's findings of fact supported by substantial credible evidence and are its conclusions of law correct?

Section 2-4-704, MCA, sets forth the statutory standards for judicial review of administrative decisions. This Court has interpreted § 2-4-704, MCA, to mean that an agency's findings of fact are subject to a "clearly erroneous" standard of review while an agency's conclusions of law will be upheld if the agency's interpretation of law is correct. Steer, Inc. v. Dept. of Revenue (Mont. 1990), 803 P.2d 601, 603, 47 St.Rep. 2199, 2200.

In his deposition, the appellant stated that he administered Buprenorphine to each horse in question on several occasions, always on the day of and prior to a race in which each horse was scheduled to run. He further stated that the drug was a painkiller sold under the name of Buprenex and that he administered it to Mr. Squeaky Ruler with the intent to relieve the horse of pain so that the horse would run "straighter and smoother" the way it normally did before becoming "mildly lame." The appellant chose that

11

particular drug because in his judgment it was a fairly mild drug and would not be detected in a urinalysis examination. By his own admission, the appellant did not inform the trainer of the name of the medication administered, its dosage, or the probable effect of the medication on the horse. In addition, documentation of the appellant's bills to the trainer of the horses in question was also offered as evidence of his administration of the drug to the horses prior to their races.

This evidence is undisputed and is substantial and credible. Therefore, the Board's findings of fact are not clearly erroneous.

The appellant contends that, even in light of this factual evidence, he did not violate any of the Board's regulations. He contends that he cannot be held in violation of the Board's regulations on the basis of medicating a racehorse before a race because under the regulations the trainer is absolutely responsible for the condition of any horse entered in a race (ARM 8.22.1401(8)); a veterinarian may medicate a racehorse with FDA approved drugs (ARM 8.22.1401(9) and (17)); and there are no time limitations relative to medication (ARM 8.22.1401(10)). We disagree.

The Board did not conclude that the appellant violated any of the regulations to which the appellant refers. The Board concluded that he violated ARM 8.22.1401(18), which requires the veterinarian to inform the owner, trainer or person requesting the treatment of the name of the medication, its dosage, and its probable effect on

12

the horse, and ARM 8.22.1501(11), which expressly prohibits any person from tampering with a horse so as to affect its speed in a race. It is true that, under the regulations, a veterinarian may medicate a horse with an FDA approved drug at any time before a race. However, that medication may not affect the speed of the horse during the race. Given the appellant's own admissions regarding the administration of the drug Buprenorphine to the horses in question, we hold that the Board correctly concluded that the appellant violated ARM 8.22.1401(18) and ARM 8.22.1501(11).

## III.

Did the Board properly grant summary judgment?

The appellant contends that the Board improperly granted summary judgment in this case, arguing that there were material factual issues in dispute and that under the Montana Administrative Procedure Act (MAPA) he had the right to an evidentiary hearing. Procedural due process requires that parties be given reasonable notice and a reasonable opportunity to be heard; these due process requirements are reflected in MAPA in §§ 2-4-601, and 2-4-612(1), MCA. Section 2-4-612(1), MCA, provides that "[o]pportunity shall be afforded all parties to respond and present evidence and argument on all issues involved." (Emphasis added.) However, due process does not require development of facts through an evidentiary hearing when there are no material factual issues in dispute. Smith v. State Dept. of Revenue, CSED (Alaska 1990), 790 P.2d 1352,

13

1353. See also, K. Davis, <u>1989 Supplement to Administrative Law Treatise</u>, § 12.10 at 332-34.

There were no material factual issues in dispute in the present case. The appellant's own deposition testimony negated any material factual issues. In addition, the appellant himself moved for summary judgment, thereby acquiescing to a summary disposition of the proceedings. Moreover, the hearing on the motions for summary judgment afforded the appellant fair opportunity to contest the legal issues raised. Accordingly, we hold that the Board properly granted summary judgment under the circumstances of this case.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

14

July 9, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Charles F. Moses
Moses Law Firm
P.O. Box 2533
Billings, MT 59103

Robert P. Verdon, Legal Counsel
Dept. of Commerce
111 North Jackson, Lower Level
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
        Deputy