No. 97-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


RICHARD K. EMERY,

Petitioner and Respondent,

v.

STATE OF MONTANA, DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES,
CHILD SUPPORT ENFORCEMENT DIVISION,

Respondent and Appellant.



APPEAL FROM:   District Court of the Fourth Judicial District,
                In and for the County of Missoula,
            The Honorable John W. Larson, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John M. McRae, Special Assistant Attorney General, Department
of Public Health and Human Services, Child Support Enforcement
Division, Missoula, Montana

For Respondent:

Richard A. Reep; Reep, Spoon & Gordon, Missoula, Montana



Submitted on Briefs: September 11, 1997

Decided:   December 23, 1997
Filed:


_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Richard K. Emery (Emery) petitioned the Fourth Judicial District Court, Missoula County, for judicial review of an administrative decision and order entered by the State of Montana, Department of Public Health and Human Services, Child Support Enforcement Division (CSED), authorizing CSED to proceed with an income withholding action against Emery. The District Court entered an opinion and order denying in part and granting in part Emery's petition. Emery subsequently moved the court to alter or amend its opinion and order on judicial review. The District Court granted Emery's motion and, thereby, dismissed CSED's income withholding action against Emery. CSED appeals from the judgment entered by the District Court on its order granting Emery's motion to alter or amend its order on judicial review. We reverse and remand.

The issue on appeal is whether the District Court abused its discretion in granting Emery's motion to alter or amend and dismissing CSED's income withholding action against Emery.

BACKGROUND

Emery's marriage to Deborah Keep (Keep) was dissolved in 1987. Pursuant to the dissolution decree, Keep was awarded residential custody of their three children and Emery was ordered to pay $375 per month to Keep for child support. Subsequent to the entry of the dissolution decree, Keep received public assistance under the Aid to Families with Dependent Children (AFDC) program for eleven months between December of 1987 and May of 1990. When she applied for AFDC benefits, Keep assigned her right to receive current and future child support payments during the period in which she received AFDC benefits, as well as her right to enforce child support obligations owed to her, to CSED.

Emery did not pay the full amount of child support ordered in the dissolution decree and a child support debt accrued. In an effort to collect the past-due child support, CSED notified Emery on October 21, 1991, that the past-due amount would be referred to the Internal Revenue Service (IRS) for collection through interception of any federal tax refund to which Emery might be entitled for that year. This tax intercept notice also informed Emery that, if he disputed the amount determined by CSED to be past due, he could request an administrative review of that determination. Emery timely requested administrative review, but no hearing was ever held on the matter; nor did the IRS intercept any federal tax refund to which Emery may have been entitled for 1991. CSED sent a second federal tax intercept notice to Emery on September 17, 1992. There

is no indication in the record that Emery ever directly responded to that notice or requested an administrative review of the past-due amount claimed therein. The IRS did not intercept any federal tax refund to which Emery might have been entitled in 1992.

Meanwhile, in June of 1992, Emery and Keep entered into a stipulation modifying the child custody provisions in the 1987 dissolution decree. Pursuant to the stipulation, Emery became the primary residential custodian of the two younger children and Keep retained residential custody of the older child. The stipulation also provided that, as long as the stipulated custody arrangement remained in effect, neither party would be required to pay child support to the other and all child support arrearages existing at the time of the stipulation would be waived. The District Court adopted the stipulation by order dated June 22, 1992. Although CSED had informal notice of the proceedings resulting in the District Court's adoption of the stipulation, it was never served with written notice and did not appear in the action or consent, in writing or otherwise, to the stipulation.

In December of 1995, CSED again initiated an attempt to collect the past-due child support it claimed against Emery, in the amount of $3,025. It served him with a Notice of Intent to Withhold (NOI) stating that CSED intended to order Emery's employer to withhold money from Emery's monthly wages to satisfy the amount due. Emery timely requested a hearing to contest the NOI, asserting that the child support arrearages had been waived under the 1992 stipulation, and a hearing was held on February 14, 1996, before a CSED administrative law judge (ALJ). The ALJ subsequently entered a decision and order in which it determined that Emery owed a child support debt in the amount of $3,025; that the stipulation and order entered in June of 1992, which purported to waive all child support arrearages, was void with respect to CSED because CSED did not participate; that CSED could enforce the child support obligation set in the original 1987 dissolution decree for the months in which Keep received AFDC benefits; and that CSED could proceed with the income withholding action.

Emery petitioned the District Court for judicial review of the ALJ's decision and order. The District Court denied Emery's petition for judicial review in part, concluding that the ALJ correctly determined that the 1992 stipulation and order "waiving" child support arrearages was void as to CSED's claim for past-due child support accrued during the periods Keep received AFDC benefits. The court also granted Emery's petition for judicial review in part, by remanding the case to CSED with instructions to redetermine the past-due amount owed by Emery.

Emery timely moved to alter or amend the District Court's opinion and order on

judicial review, asserting two bases on which the court should dismiss CSED's income withholding action. The District Court granted Emery's motion to alter or amend and dismissed CSED's income withholding action on the basis that the delay between Emery's 1991 request for administrative review and the February 14, 1996, hearing before the ALJ violated his rights to due process of law and the administration of justice without delay under the Montana Constitution. CSED appeals.

## STANDARD OF REVIEW

We review a district court's ruling on a motion to alter or amend to determine whether the court abused its discretion. See Estate of Nielsen v. Pardis (1994), 265 Mont. 470, 478, 878 P.2d 234, 238 (citations omitted). Here, the basis for the District Court's grant of Emery's motion to alter or amend was its conclusion that CSED had violated Emery's rights to due process of law and the administration of justice without delay. We review this underlying conclusion of law to determine whether the court's interpretation of the law is correct. Connell v. State, Dept. of Social Services (1997), 280 Mont. 491, 494, 930 P.2d 88, 90.

## DISCUSSION

Did the District Court abuse its discretion in granting Emery's motion to alter or amend and dismissing CSED's income withholding action against Emery?

Emery's motion to alter or amend the District Court's opinion and order on judicial review was based, in part, on our decision in Connell, which he asserts is analogous to the facts in this case and compels a conclusion that CSED's income withholding action should be dismissed. The District Court agreed with Emery's interpretation of Connell and determined that the delay of over four years between Emery's initial request for administrative review of the 1991 federal tax intercept notice and the February 14, 1996, hearing on the NOI violated his rights to the administration of justice without delay and due process of law as guaranteed by Article II, Sections 16 and 17 of Montana's Constitution. CSED argues that Connell is distinguishable from the present case and, as a result, that the District Court erred in relying on Connell as authority for dismissing its income withholding action against Emery. We agree.

In Connell, CSED initiated an income withholding action against Connell for past-due child support by serving him with an NOI in February of 1990. Additionally, in June of 1990, the State Auditor's office served Connell with notice that his 1990 state tax refund would be offset against the amount he owed to CSED. An administrative hearing was held on both the NOI and the state tax refund offset on February 15, 1991; at the conclusion of the hearing, a schedule for the submission of proposed findings of fact and conclusions of law was established. Connell, 930 P.2d at 90. Although Connell timely submitted his proposed findings of fact and conclusions of law, CSED failed to do so,

either timely or at all. Nor did the hearings officer enter a final decision. Connell, 930 P.2d at 90.

Almost four years after the hearing in February of 1991, a new hearings officer took over the case and ordered the parties to appear via a telephone conference to present arguments and motions regarding the preparation of findings of fact, conclusions of law and an order in the matter. Connell, 930 P.2d at 90. Connell moved for a default judgment against CSED or, in the alternative, to dismiss the case; the hearings officer denied Connell's motions on July 28, 1995, and ordered a rehearing of the matter. Connell petitioned for judicial review, the district court affirmed the order setting a rehearing and Connell appealed. Connell, 930 P.2d at 90.

We reversed the district court on appeal. We reiterated the long-established principle that due process requires providing a person the opportunity to be heard at a meaningful time and in a manner which comports with principles of fair play, adding that administrative proceedings must also be conducted in accordance with fundamental principles of fair play. Connell, 930 P.2d at 91 (citations omitted). We further determined that Montana's constitutional guarantee of justice without delay was implicated when extraordinary delays occurred in legal proceedings. Connell, 930 P.2d at 91. Under the facts before us, we concluded that "failure on the part of CSED's hearings office to render a decision after a lapse of 44 months constitutes undue delay under Montana Constitution Article II, Section 16, and violates the due process guarantees under Montana Constitution Article II, Section 17." Connell, 930 P.2d at 92-93.

In this case, CSED served its NOI regarding the income withholding action on Emery in December of 1995. Emery requested a hearing and the hearing was held on February 14, 1996. The ALJ's decision and order was entered on July 1, 1996, less than five months later. The delay between the hearing and the resulting decision in this case was minimal and did not begin to approach the magnitude of the 44-month delay in Connell. Thus, Connell is distinguishable from the present case on the facts and, as a result, it is not authority for a determination that CSED violated Emery's constitutional rights to due process and the administration of justice without delay in the period following the hearing on the NOI.

The District Court, however, perceived the delay in this case as that occurring between the time Emery first requested a hearing on the 1991 federal tax intercept notice and the 1996 hearing on the 1995 NOI. It determined that our constitutional analysis in Connell applies to such delays between the request for, and grant of, an administrative hearing and concluded that the delay here was impermissible and unconstitutional under Connell. CSED asserts that the District Court erred in treating CSED's child support

collection efforts as one long administrative action initiated with the 1991 federal tax intercept notice and in implicitly concluding that Emery's right to a hearing on that federal tax intercept notice continued without abeyance until a hearing was eventually granted. CSED argues that the District Court's application of Connell based on these erroneous conclusions was incorrect.

Child support which is due under a dissolution decree and which is unpaid becomes a judgment debt similar to any other money judgment. In re Marriage of Sabo (1986), 224 Mont. 252, 254, 730 P.2d 1112, 1113 (citations omitted); In re Marriage of Brown (1994), 263 Mont. 184, 188-89, 867 P.2d 381, 383-84. Thus, Emery's failure to pay the full amount of child support ordered in the 1987 dissolution decree during the intermittent months Keep received AFDC benefits between December of 1987 and May of 1990 resulted in a judgment debt against him. Furthermore, when Keep applied for AFDC benefits, she assigned her right to enforce that judgment debt against Emery to CSED. Pursuant to statute, CSED had ten years from the date Emery's child support payments became past due in which to initiate collection proceedings against him on the resulting judgment debt. Section 27-2-201(3), MCA; In re Marriage of (Crittendon) Hooper (1991), 247 Mont. 322, 327, 806 P.2d 541, 544.

CSED is authorized to collect past-due child support amounts through various administrative remedies. For example, õ 40-5-412, MCA, authorizes CSED to collect child support arrearages through income withholding, a remedy which CSED initiated in this case via its NOI in December of 1995. Other administrative remedies include license suspension under õ 40-5-703, MCA, state debt offsets under õ 17-4-105, MCA, and warrants for distraint under õ 40-5-247, MCA. CSED also is authorized, by 42 U.S.C. õ 664, to collect past-due child support via federal tax refund intercepts such as it initiated against Emery in 1991. Each of these administrative remedies is a separate collection remedy, with separate statutory procedural requirements, which CSED may pursue individually or simultaneously at any time within the ten-year statute of limitations period. CSED's election to pursue one remedy does not preclude pursuit of other remedies at the same, or a later, time. See, e.g., õõ 40-5-404(1) and 40-5-247(9), MCA. Thus, contrary to the District Court's perception, CSED's attempts to collect child support arrearages are not one continuous collection action, but rather a series of independent and, occasionally, cumulative actions.

Article II, Section 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law." Procedural due process concerns, and the concomitant right to notice and a hearing, do not arise unless there is an actual or threatened deprivation of a person's life, liberty or property. See, e.g., State ex rel. Dept. of Health v. Reese (1993), 260 Mont. 24, 27, 858 P.2d 357, 359. When CSED initiates a collection action there is a threatened deprivation of a child support debtor's property, usually the debtor's money, and the right to a due process

hearing arises.  The statutes authorizing CSED's various administrative collection actions
recognize this due process right by providing corresponding rights to notice of the
proposed action and the opportunity to request and receive a hearing.  See, e.g., õ 40-5-
413, MCA (notice of intent to withhold income); õ 40-5-414, MCA (hearing on proposed
income withholding action); õ 40-5-702, MCA (notice of intent to suspend license for
nonpayment of child support); õ 40-5-703, MCA (hearing on action to suspend
license).
While each individual hearing may include a review of whether the amount of child
support CSED has determined to be past due is correct, the hearing itself is specifically
tied to the particular administrative remedy initiated by CSED.
As discussed above, there was little delay involved in the proceedings and decision
regarding CSED's NOI in December of 1995.  The administrative remedy and
corresponding right to a hearing at issue here is the 1991 federal tax refund intercept
action.  Upon receiving CSED's notice of the federal tax intercept action Emery timely
requested a hearing, asserting that he did not owe the amount determined by CSED to be
past due.  A hearing was scheduled, but later was continued indefinitely.  In the interim,
the IRS did not intercept any federal tax refund money to which Emery was entitled in
1991 and, when no tax refund money was intercepted by the IRS, CSED discontinued
action on the 1991 federal tax intercept collection attempt.  Nevertheless, in October and
November of 1993, Emery repeated his request for a hearing on the amount of past-due
child support claimed by CSED; CSED did not grant his request.  Eventually, in his
motion to alter or amend the District Court's opinion and order on judicial review, Emery
contended that CSED's failure to grant his request for a hearing on the 1991 federal tax
intercept collection attempt violated his right to due process.
As stated above, the initiation of a CSED administrative collection remedy raises
the threat of a deprivation of property which, in turn, raises procedural due process
concerns.  However, when that particular administrative collection remedy is
discontinued, the threat of a property deprivation is withdrawn and the necessity for a due
process hearing evaporates.  Thus, when the IRS did not intercept any federal tax refund
monies to which Emery was entitled in 1991 and CSED discontinued action on that
collection effort, the threatened deprivation of Emery's property no longer existed.
Concomitantly, the requirement of a due process hearing on the 1991 federal tax intercept
notice also no longer existed.  Emery's requests for a hearing in the fall of 1993 were not
sufficient to require a hearing because the requests were not attached to any specific
action or proposed action by CSED which threatened to deprive Emery of his property.

Moreover, State agencies may act only as authorized by the statutes enacted by the legislature. See Bick v. State, Dept. of Justice (1986), 224 Mont. 455, 457, 730 P.2d 418, 420. We know of no statute, or administrative rule promulgated thereunder, which authorizes CSED to grant a hearing to a child support debtor absent a proposed or pending administrative collection action by CSED, and the due process provision of the Montana Constitution, in itself, does not require CSED to grant Emery a hearing absent a threatened or actual deprivation of his life, liberty or property. See Art. II, Sec. 17, Mont. Const. There simply is no right to a hearing unless and until there is an agency action pending on which a hearing could be held.

Neither is the constitutional guarantee of administration of justice without delay, as provided in Article II, Section 16 of the Montana Constitution, implicated in this case.

In Connell, Article II, Section 16 of the Montana Constitution was addressed, in conjunction with the Article II, Section 17 due process of law provision, as being a constitutional guarantee of "prompt disposition of administrative actions . . . ." Connell, 930 P.2d at 91. However, each administrative action initiated by CSED against Emery was disposed of promptly. Both the 1991 and 1992 federal tax intercept actions were discontinued after the IRS did not intercept any refund money to which Emery was entitled in those years. The NOI served on Emery in December of 1995 was disposed of at the administrative level less than eight months later when the ALJ's decision and order was entered on July 1, 1996. Thus, in each of these administrative actions against Emery, the Article II, Section 16 requirement of "prompt disposition" was met by CSED.

Finally, we agree with CSED's assertion that there is no requirement in Article II, Section 16 of the Montana Constitution that a judgment creditor--in this case, CSED-- must "speedily and without delay" apply for any particular remedy within any particular time. As discussed above, the period within which CSED may initiate collection actions against a child support debtor is ten years from the date the child support obligation becomes past due. Section 27-2-201(3), MCA; Marriage of Hooper, 806 P.2d at 544. CSED may initiate one, or several, collection actions at any point within that ten-year period. Once such a collection action is initiated, Article II, Section 16 requires that it be resolved without undue delay--that is, "disposed of promptly"--but there is no requirement in this constitutional provision that CSED take steps to begin a collection

action at any particular time after the child support debt accrues.  The practical effect of a determination that Article II, Section 16 of Montana's Constitution requires CSED to initiate attempts to collect child support debts promptly, without undue delay and prior to the expiration of the ten-year statute of limitations would be to eliminate that limitations period.

We conclude that the District Court erred in determining that CSED violated Emery's constitutional rights to due process of law and the administration of justice without delay by not granting his request for an administrative hearing in the period between the termination of the 1991 federal tax refund intercept action and service of the 1995 NOI.  We hold, therefore, that the District Court abused its discretion in granting Emery's motion to alter or amend and in dismissing CSED's income withholding action against Emery.

Reversed and remanded with instructions that the District Court reinstate its original opinion and order on judicial review.

/S/  KARLA M. GRAY

We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  WILLIAM E. HUNT, SR.
/S/  W. WILLIAM LEAPHART
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER