No. 04-155

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 55

LINDA DOWELL,

        Petitioner and Appellant,

   v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

        Respondent and Respondent.

APPEAL FROM:    The District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. ADV 2003-384,
                   Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Angela Zielinski, Sullivan, Tabaracci & Rhoades, P.C.,
                Missoula, Montana

        For Respondent:

                Michelle J. Maltese, Special Assistant Attorneys General,
                Department of Public Health and Human Services,
                Helena, Montana

                        Submitted on Briefs:  October 14, 2004

                                 Decided:  March 14, 2006

Filed:

             _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     Linda Dowell moved the Montana Department of Public Health and Human Services (DPHHS) to dismiss its April 1999 substantiations against her for exposing her children to unreasonable risk and for physical neglect on the basis that DPHHS failed to afford her due process.  DPHHS upheld its substantiation against Dowell for exposing her children to an unreasonable risk, but vacated its substantiation of physical neglect against Dowell.  Dowell appealed DPHHS's decision to the District Court for the First Judicial District, Lewis and Clark County, which affirmed the agency's order.  Dowell then appealed to this Court and we affirm.

¶2     Dowell raises the following issues on appeal:

¶3     1.  Has Dowell's constitutional right to due process been violated under the facts of this case?

¶4     2.  Were Dowell's substantial rights prejudiced by the alleged violation of her constitutional rights?

¶5     3.  Is Dowell's right to a substantiation hearing barred by collateral estoppel?

¶6     4.  Was the Fair Hearing Decision in this case arbitrary, capricious and an abuse of discretion pursuant to § 2-4-704(2)(vi), MCA?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7     In April 1999, Dowell and her boyfriend were arrested in their home for possession of dangerous drugs and drug paraphernalia.  As a result, DPHHS placed Dowell's children, J.W. and K.D., in emergency foster care.  On April 10, 1999, DPHHS substantiated the alleged

2

child abuse against Dowell finding that Dowell neglected her children due to a home environment that was unsanitary and that she exposed them to an unreasonable risk "by manufacturing crystal methamphetamine in the home and storing paraphernalia such as hypodermic needles in the home."

¶8 The District Court granted temporary legal custody to DPHHS on May 18, 1999, after a hearing. In its order adjudicating Dowell's children as youths in need of care pursuant to § 41-3-404, MCA (1997), the court ruled that Dowell "put the youths at a direct, substantial, and unreasonable risk to their health and welfare when she allowed a significant quantity of methamphetamine to be left in a location easily accessible to the youths." The court noted that compounding that risk was the fact that "the methamphetamine had the consistency and appearance of peanut butter" and that "[t]he obvious temptation to sample this 'peanut butter' would have had potentially deadly consequences for these youths."

¶9 On August 17, 1999, the District Court extended the temporary legal custody and approved a treatment plan for Dowell. However, the following day, Dowell learned that a federal warrant had been issued for her arrest and she "disappeared" for five weeks. Eventually Dowell turned herself in to law enforcement and she was incarcerated until January 26, 2000. Dowell pled guilty in federal court to possession of methamphetamine on March 10, 2000, and she was sentenced to three years probation.

¶10 On April 17, 2000, the District Court terminated Dowell's parental rights. We upheld the District Court's decision in *In re J.W.*, 2001 MT 86, 305 Mont. 149, 23 P.3d 916.

3

¶11　Dowell went on to attend the Helena College of Technology in pursuit of a physical therapy license.  In October 2001, Dowell applied to be a day care worker at Kids World Day Care in Helena.  In a letter dated February 14, 2002, DPHHS's Child Care Licensure Bureau notified Dowell that her application was denied because of the substantiated child abuse and neglect record from April 10, 1999.  In another letter dated April 15, 2002, DPHHS notified Dowell that she had the right to an administrative fair hearing regarding the denial of her application.  Dowell timely requested a hearing.

¶12　On September 20, 2002, DPHHS upheld the substantiation determination after conducting an informal review through its substantiation review panel.  A hearing was set for November 26, 2002, however, DPHHS filed a motion and brief for summary judgment based on the doctrine of collateral estoppel on November 20, 2002.  DPHHS noted that it had removed the substantiation for physical neglect, but argued that the exposure to unreasonable risk decision was previously decided by the District Court's May 18, 1999 Order.  After further briefing, the hearing officer granted summary judgment in DPHHS's favor based on the doctrine of collateral estoppel and determined that Dowell was not entitled to a substantiation hearing.  Dowell petitioned for judicial review and the District Court upheld the hearing officer's decision.  Dowell appeals.

## STANDARD OF REVIEW

¶13    This court reviews a district court's conclusions of law to determine whether the district court's interpretation of the law is correct. *Connell v. State, Dept. of Social Services* (1997), 280 Mont. 491, 494, 930 P.2d 88, 90 (citing *Steer, Inc. v. Department of Revenue* (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603).

## ISSUE 1

¶14    *Has Dowell's constitutional right to due process been violated under the facts of this case?*

¶15    Dowell claims that DPHHS failed to provide her with notice and an opportunity for a hearing before substantiating child abuse against her. She further claims that DPHHS failed to notify her that the substantiation of abuse would result in restrictions to her employment opportunities. Hence, Dowell argues that by failing to provide her with notice and an opportunity to be heard at a meaningful time and in a meaningful manner, DPHHS violated her due process rights under the Fourteenth Amendment to the United States Constitution and Article II, Section 17 of the Montana Constitution.

¶16    In its response brief, DPHHS notes that it agrees with Dowell that substantiation determinations may affect liberty interests in obtaining licensure and employment opportunities in DPHHS regulated child care fields. However, DPHHS contends that providing Dowell with a fair hearing opportunity after the denial of her day care worker application met due process requirements.

5

¶17    DPHHS argues that, while the fundamental requirement of due process of law is the opportunity to be heard in a meaningful time and in a meaningful manner, *Mathews v. Eldridge* (1976), 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, the parties differ on what constitutes a meaningful time and manner in this case.  DPHHS points out that due process is not a technical concept with a fixed content unrelated to time, place and circumstances, rather, it is flexible and calls for such procedural protections as the particular situation demands.  *Mathews*, 424 U.S. at 334, 96 S.Ct. at 902.

¶18    To determine what administrative procedures are constitutionally sufficient, the United States Supreme Court stated in *Mathews* that

> identification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 96 S.Ct. at 903 (citing *Goldberg v. Kelly* (1970), 397 U.S. 254, 263-71, 90 S.Ct. 1011, 1018-22, 25 L.Ed.2d 287).

¶19    As DPHHS notes, the amount of due process required for a substantiation case is not provided in Montana law.  However, both parties point out that the Second Circuit Court of Appeals has analyzed the issue using the three-part test set forth in *Mathews*.  In *Valmonte v. Bane* (2d Cir. 1994), 18 F.3d 992, 1003-04, the court determined:  (1) a substantiated person has a legitimate liberty interest in pursuing his or her chosen occupation; (2) the state has a significant interest in protecting children from abuse or maltreatment by those charged with

6

their care; and (3) the risk of error in depriving the substantiated person's legitimate occupational liberty interest requires that the substantiated child abuse or neglect be proven by a fair preponderance of the evidence.

¶20 In this case, there is no question that Dowell has a legitimate liberty interest in pursuing her chosen occupation or that the State has a significant interest in protecting children from abuse or maltreatment by those charged with their care. As to the third prong of the test, the District Court's May 18, 1999 Order granting temporary legal custody of Dowell's children to DPHHS, stated that Dowell admitted to having "a significant quantity of methamphetamine, hypodermic needles, and other drug paraphernalia in her home" that was "in a location accessible to the youths and that such access exposed the youths to an unreasonable risk to their health and welfare."

¶21 Due process does not require development of facts through an evidentiary hearing when there are no material factual issues in dispute. *Matter of Peila* (1991), 249 Mont. 272, 281, 815 P.2d 139, 144. Because Dowell already admitted at a previous hearing to the facts underlying the substantiation determination, no further evidentiary hearing was necessary.

¶22 In her brief on appeal, Dowell focuses on this Court's holding in *Connell v. State, Dept. of Social Services* (1997), 280 Mont. 491, 930 P.2d 88, as being determinative of her case. However, we agree with the Hearing Officer, the District Court and DPHHS that *Connell* is not dispositive here. *Connell* involved an administrative child support action where the agency had specific time lines in statutes and administrative rules to issue a final decision after a hearing. This Court ruled in *Connell* that the agency's Hearing Officer did

7

not issue a final decision until 44 months later in contravention of the agency's 45-day requirement regarding income withholding actions. *Connell*, 280 Mont. at 496, 930 P.2d at 91. Unlike *Connell*, there are no statutes or administrative rules setting forth deadlines within which DPHHS must issue substantiation notifications, conduct informal reviews, set hearings, or issue decisions. Rule 37.5.325(1)(b), ARM, specifies only that all fair hearings before DPHHS must be conducted "at a reasonable time and date" without listing specific deadlines.

¶23 DPHHS argues that what is determinative in Dowell's case are the rights that DPHHS provided Dowell *at the time* Dowell became adversely impacted by the substantiation finding. Concerns about procedural due process, and the concomitant right to notice and a hearing, do not arise until there is an actual or threatened deprivation of the person's life, liberty or property interest. *Emery v. State, Dept. of Public Health* (1997), 286 Mont. 376, 384, 950 P.2d 764, 769. Article II, Section 17 of the Montana Constitution does not require the State to grant a person a hearing absent a threatened or actual deprivation of a liberty interest. *Emery*, 286 Mont. at 385, 950 P.2d at 769. "There simply is no right to a hearing unless and until there is an agency action pending on which a hearing can be held." *Emery*, 286 Mont. at 385, 950 P.2d at 769.

¶24 Dowell's right to a hearing did not arise until October 2001, when she applied to be employed at a day care facility. After denying her employment as a child care worker, DPHHS provided Dowell notice of the substantiation determination and her right to request a fair hearing. Dowell made her requests in April and May 2002 which DPHHS honored.

8

Both the Hearing Officer and the District Court determined that this provided Dowell with ample due process protections and we agree.

¶25   Moreover, DPHHS asserts that even if it is determined that DPHHS violated Dowell's due process rights by not providing notification soon after its investigation into the abuse and neglect allegations in 1999, such omission would be harmless error because the District Court's May 18, 1999 Order regarding temporary legal custody would have served as definitive proof regarding the substantiation.  In its January 21, 2004 Decision and Order, the District Court ruled:

> The factual basis for [DPHHS's] "substantiation"—the district court's declaration that the children were youths in need of care and the district court's termination of Dowell's parental rights—are not in dispute in this proceeding. Had Dowell received notice and had an immediate agency review of the "substantiation," the results would have been no different.  Thus, although she may have been denied procedural due process at the time, *no prejudice resulted*.  [Emphasis added.]

¶26   Accordingly, we hold that Dowell's constitutional right to due process was not violated under the facts of this case.

9

**ISSUE 2**

*¶27    Were Dowell's substantial rights prejudiced by the alleged violation of her constitutional rights?*

¶28    Dowell contends on appeal that DPHHS's failure to provide her with timely notice prejudiced her right to obtain employment as a physical therapy assistant.  DPHHS contends that Dowell never presented this particular issue at the fair hearing level where she originally focused on being employed at a day care center.  DPHHS maintains that because Dowell raised the physical therapy assistant issue for the first time on judicial review before the District Court, that argument must be stricken from consideration on appeal to this Court.

¶29    Section 2-4-704(1), MCA, provides that judicial review of an agency decision must be confined to the record that was brought before the agency.  DPHHS is correct when it points out that a substantiation determination affects employment and licensure in various child care facilities that DPHHS licenses, but any implications on being licensed as a physical therapy assistant must be determined by Montana's Board of Physical Therapists through the Business and Occupational Licensing Bureau of the Department of Labor and Industry, not DPHHS.  Dowell has provided no evidence that the substantiation determination has impacted her employment as a physical therapy assistant.

¶30    Accordingly, we hold that Dowell's substantial rights have not been prejudiced by the alleged violation of her constitutional rights.

10

**ISSUE 3**

¶31    Is Dowell's right to a substantiation hearing barred by collateral estoppel?

¶32    Dowell argues that the District Court erred in upholding the hearing officer's conclusion that Dowell's right to a substantiation hearing was barred by collateral estoppel. She maintains that DPHHS's delay in advising her of her legal rights dictates that any issues to be decided at her substantiation hearing must be relitigated according to the due process clause of the United States and Montana Constitutions, MAPA, and DPHHS's own procedural rules and basic tenets of fairness. To decide otherwise would reward DPHHS for violating Dowell's right to due process.

¶33    DPHHS argues on the other hand that although Dowell was provided an opportunity for a hearing, the doctrine of collateral estoppel precludes Dowell's right to have an evidentiary hearing because the facts of the substantiation decision were the same as those already adjudicated by the District Court. Furthermore, DPHHS maintains that "[h]ad Dowell received notice and had an immediate agency review of the 'substantiation,' the results would have been no different."

¶34    Collateral estoppel "bars the reopening of an issue in a second cause of action that had been litigated and determined in a prior suit." *Auto Parts v. Employment Relations Div.*, 2001 MT 72, ¶ 29, 305 Mont. 40, ¶ 29, 23 P.3d 193, ¶ 29 (citing *Holtman v. 4-G's Plumbing & Heating, Inc.* (1994), 264 Mont. 432, 439, 872 P.2d 318, 322). Collateral estoppel also prevents relitigation of determinative facts which were actually or necessarily decided in a prior action. *Haines Pipeline Const. v. Montana Power* (1994), 265 Mont. 282, 288, 876

11

P.2d 632, 636. Traditionally, we have applied the following three-part test to determine if collateral estoppel bars relitigation of an issue: (1) whether the issue decided in the prior adjudication was identical to the one presented in the action in question; (2) whether there was a final judgment on the merits in the prior adjudication; and (3) whether the party in the present action was a party to or in privity with a party to the prior adjudication. *Auto Parts,* ¶ 30 (citing *Haines,* 265 Mont. at 288, 876 P.2d at 636; *In re Raymond W. George Trust*, 1999 MT 223, ¶ 42, 296 Mont. 56, ¶ 42, 986 P.2d 427, ¶ 42).

¶35    However, in *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 18, ___ Mont. ___, ¶ 18, ___ P.3d ___, ¶ 18, we added a fourth element to our analysis of collateral estoppel with the intention of protecting litigants' due process rights. Thus, in addition to the above enumerated elements, application of collateral estoppel requires: "(4) the party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred." *Baltrusch*, ¶ 18.

¶36    All four elements of collateral estoppel apply in this case. First, the issue decided in the May 18, 1999 Youth-in-Need-of-Care proceeding and the determinative facts in that proceeding are the same as the issue and the determinative facts in DPHHS's substantiation decision. Both relate to Dowell's admission before the District Court that she had methamphetamine, hypodermic needles and other drug paraphernalia in her home within reach of her children.

¶37    Second, there was an adjudication on the merits of DPHHS's substantiation determination. The District Court's Order of May 18, 1999, states that Dowell "put the

youths at a direct, substantial, and *unreasonable* risk to their health and welfare when she allowed a significant quantity of methamphetamine to be left in a location readily accessible to the youths." That finding was upheld in the parental termination proceedings and affirmed by this Court.

¶38    Third, Dowell is the same party in both the Youth-in-Need-of-Care adjudication and DPHHS's substantiation determination. Fourth, Dowell had a full and fair opportunity to litigate the issue at the May 17, 1999 hearing regarding DPHHS's petition for temporary legal custody. Dowell was present at that hearing with her counsel and it was at that hearing that Dowell admitted that law enforcement officers found a significant quantity of methamphetamine, hypodermic needles and other drug paraphernalia in her home and accessible to her children.

¶39    Because we have determined that all four elements exist in this case, we conclude that the doctrine of collateral estoppel applies and that Dowell cannot relitigate the substantiation determination in an administrative hearing. Furthermore, DPHHS's motion for summary judgment on the basis of collateral estoppel did not violate Dowell's procedural due process rights as she contends.

¶40    Dowell also asserts that she should be allowed to introduce evidence of her current good character at a hearing to mitigate the impact of the substantiation decision. However, evidence of Dowell's current character does not disprove that in 1999, she exposed her children to an unreasonable risk of harm by having methamphetamine, hypodermic needles

13

and other drug paraphernalia in her home and accessible to her children. Rule 402, M.R.Evid., specifically provides that "[e]vidence which is not relevant is not admissible."

¶41 Accordingly, we hold that Dowell's right to a substantiation hearing is barred by collateral estoppel.

## ISSUE 4

¶42 *Was the Fair Hearing Decision in this case arbitrary, capricious and an abuse of discretion pursuant to § 2-4-704(2)(vi), MCA?*

¶43 Dowell contends that the Hearing Officer's Finding of Fact No. 8, that DPHHS substantiated abuse against Dowell in April 1999 without notifying her, and Finding of Fact No. 9, that DPHHS did not inform Dowell of her due process rights until 2002, contradict his conclusion that DPHHS did not violate Dowell's due process rights. Consequently, Dowell argues that the Fair Hearing Decision in this case is arbitrary, capricious and an abuse of discretion pursuant to § 2-4-704(2)(vi), MCA, and that the District Court erred in upholding that decision.

¶44 DPHHS contends, on the other hand, that Findings of Fact Nos. 8 and 9 do not conflict with the Hearing Officer's conclusion when the decision is read in its entirety. DPHHS maintains that the Hearing Officer provided other findings and conclusions that disproved that Dowell was denied her right to due process by receiving a late notice. Hence, DPHHS argues that the Fair Hearing Decision was not arbitrary and capricious and was properly upheld by the District Court.

¶45 In reading the Fair Hearing Decision in its entirety, we agree that the Hearing Officer's findings did not contradict his conclusion that DPHHS did not violate Dowell's due process rights. In Finding of Fact No. 10, the Hearing Officer found that DPHHS provided Dowell with the appropriate notice on April 15, 2002. In Finding of Fact No. 11, the Hearing Officer found that DPHHS proceeded with its review and hearing process after notification as it would have for any other substantiation challenge. In Conclusion of Law No. 7, the Hearing Officer concluded that Dowell had "the opportunity to mount a challenge even at this late date" despite the amount of time that had passed between the substantiation determination and Dowell's application for employment as a day care worker.

¶46 Accordingly, we hold that the Fair Hearing Decision, read in its entirety, was not arbitrary, capricious or an abuse of discretion.

¶47 Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

15