FILED

November 27 2007

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 06-0611

IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 306

REBECCA KUBACKI and EDWARD KUBACKI,

       Plaintiffs and Appellants,

  v.

MELISSA K. MOLCHAN,

       Defendant and Appellee.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DV-2006-058
                Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Scott G. Hilderman, Johnson, Berg, McEvoy & Bostock, PLLP,
          Kalispell, Montana

      For Appellee:

          Paula M. Johnson-Gilchrist, Johnson-Gilchrist Law Firm, PLLC,
          Whitefish, Montana

                          Submitted on Briefs:  July 11, 2007

                                  Decided:  November 27, 2007

Filed:

_____
                           Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Appellants Rebecca and Edward Kubacki (Kubackis) appeal an order of the Nineteenth Judicial District Court granting Melissa Molchan's (Melissa) motion to dismiss their action to quiet title. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    On January 10, 2006, the District Court in Flathead County dissolved the marriage of William and Melissa Molchan. The decree of dissolution provided for the distribution of the assets of the Molchans' marital estate. One of those assets, a parcel of real property located in Lincoln County, Montana (Eureka Property), forms the object of the current appeal.

¶3    While they were married, William and Melissa purchased the Eureka Property by a Contract for Deed in November of 2001. They made an initial down payment of $2,000.00, with monthly payments of $250.00 thereafter. William and Melissa eventually fell behind on their monthly payments. Because they ran the risk of defaulting on their loan and forfeiting the Eureka Property, William and Melissa sold it by a Warranty Deed to the Kubackis in January of 2003. As part of the deal, the Kubackis agreed to make the late payments in the amount of $790.29, and then assume the monthly payments thereafter. Since purchasing the property, the Kubackis have made the monthly payments and paid property taxes.

¶4    Rebecca Kubacki is the sister of William Molchan. During dissolution proceedings in Flathead County, the District Court found that Rebecca aided William in a scheme to deceitfully hide the extent of his marital assets from the District Court. One of

2

those assets was the Eureka Property. The District Court found that the sale of the Eureka Property was never intended to be final, the actual intent being that if William was ever able to resume monthly payments, the Kubackis would sell the Eureka Property back to him at an agreed-upon price. In the course of the dissolution, the District Court found that a "secret deal" to sell the Eureka Property back to William had already been executed. As evidence of this deal, the District Court noted the conveyance from William to Rebecca of "property expenses" totaling $7,719.00. The District Court concluded that these expenses served the dual purpose of both concealing the extent of William's marital assets from the District Court, and ensuring that William could retain his interest in the Eureka Property.

¶5     Because of this, the District Court determined that the Eureka Property was marital property and should be considered in the distribution of the marital estate. The District Court ordered that the Kubackis convey the Eureka Property to Melissa, and that Melissa sell the property with the proceeds to be equitably distributed between William and Melissa. Because the Eureka Property could be sold for somewhere in the range of $130,000.00, it was a significant asset of the marital estate.

¶6     On February 14, 2006, Melissa asked the District Court in Flathead County to enter an order enforcing its decree regarding the Eureka Property and directing William and the Kubackis to appear and show cause why the Eureka Property should not be conveyed to Melissa. Although Rebecca Kubacki had previously been subpoenaed to testify at the dissolution in connection with her actions in hiding William's assets from the District Court, and had come to Flathead County to testify during the dissolution,

3

neither of the Kubackis were named as parties to the underlying dissolution nor were they served with summons. In fact, the Kubackis only received notice of this order to show cause by mail at their home in Pennsylvania. Nevertheless, the Kubackis appeared in District Court on February 20, 2006, for the sole purpose of contesting the District Court's jurisdiction over them. They moved to dismiss the show cause order, arguing that the District Court never obtained jurisdiction over them because they were never served with summons to appear and never named as parties to the underlying dissolution. Thus, they argued the District Court had no authority to order them to convey the Eureka Property to Melissa.

¶7 The District Court in Flathead County rejected the Kubackis' motion, and on April 4, 2006, directed the Lincoln County Clerk and Recorder to convey the Eureka Property to Melissa. In its order, the District Court found that the Kubackis had notice of the dissolution by virtue of the fact that Rebecca had come to Montana to testify at the November 2004 dissolution hearing, and because she had received subpoenas relating to her involvement in hiding William's assets from the District Court. The District Court concluded that the Kubackis' failure to intervene in the underlying dissolution "cannot now be remedied by their claim that the Court does not have jurisdiction over them because they were not named as parties nor served with Summons." The District Court found that the "secret deal" between Rebecca and William and the course of their deceitful conduct warranted inclusion of the Eureka Property in the marital estate and, further, that the District Court had jurisdiction over the Eureka Property by virtue of its status as property of the marital estate. As such, the District Court had the power to

terminate the Kubackis' title in the property, and order that it be transferred to Melissa. The Kubackis did not appeal this ruling.

¶8      On April 7, 2006, three days after the District Court in Flathead County directed the Lincoln County Clerk and Recorder to convey the Eureka Property to Melissa, the Kubackis filed an action to quiet title in the Nineteenth Judicial District Court, Lincoln County, where the Eureka Property is located. This is the suit which is the subject matter of this appeal. The Kubackis argued that the Flathead County District Court's order was void because the District Court lacked jurisdiction over them. Rebecca opposed this quiet title action by filing a motion to dismiss. On August 9, 2006, the Lincoln County District Court granted Rebecca's motion and dismissed the Kubackis' action to quiet title.[1] In its order, the District Court in Lincoln County found that the Kubackis were foreclosed from attacking the Flathead County District Court's decision under the doctrine of collateral estoppel. The District Court concluded that all of the elements of collateral estoppel were satisfied, and that the Kubackis were barred from challenging the ruling of the Flathead County District Court in Lincoln County. The Kubackis appeal this ruling of the Lincoln County District Court.

## ISSUE

¶9      We state the sole issue on appeal as follows: Did the District Court correctly conclude that the doctrine of collateral estoppel bars the Kubackis from challenging the decision of the Flathead County District Court?

---

[1] Because the District Court heard oral argument on Rebecca's motion to dismiss under M. R. Civ. P. 12(b)(6), the District Court's order will be treated as an entry of summary judgment pursuant to M. R. Civ. P. 54. See M. R. Civ. P. 12(b).

## STANDARD OF REVIEW

¶10 "We review a District Court's grant of summary judgment de novo. We apply the standard declared by Rule 56, M. R. Civ. P. The moving party must establish the absence of a genuine issue of material fact and her entitlement to judgment as a matter of law. We review a district court's conclusions of law to determine whether they are correct." *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 11, 331 Mont. 281, ¶ 11, 130 P.3d 1267, ¶ 11 (citations omitted).

## DISCUSSION

¶11 Did the District Court correctly conclude that the doctrine of collateral estoppel bars the Kubackis from challenging the decision of the Flathead County District Court?

¶12 Although the District Court expressed doubts about whether the Flathead County order could be subject to collateral attack in this case, it ultimately dismissed the Kubackis' quiet title action under the doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, bars the reopening of an issue that has been litigated and determined in a prior suit." *Baltrusch*, ¶ 15. This doctrine "embod[ies] a judicial policy that favors a definite end to litigation, whereby we seek to prevent parties from incessantly waging piecemeal, collateral attacks against judgments . . . ." *Baltrusch*, ¶ 15 (citation omitted). In Montana, collateral estoppel bars future litigation when the following four elements are satisfied:

(1) the identical issue raised was previously decided in a prior adjudication;

(2) a final judgment on the merits was issued in the prior adjudication;

(3) the party against whom collateral estoppel is now asserted was a party or in privity with a party to the prior adjudication; and

(4) the party against whom preclusion is asserted must have been afforded a full and fair opportunity to litigate any issues which may be barred.

*Baltrusch*, ¶ 18.

¶13 Before the District Court in Lincoln County, the Kubackis argued that the third and fourth elements had not been satisfied.[2] The District Court rejected these arguments. The District Court found the privity element satisfied by virtue of the blood relationship between William and Rebecca, and the fact that Rebecca was a successor in interest to the Eureka Property. With respect to the fourth element, the District Court rejected the notion that the Kubackis were not afforded a full and fair opportunity to litigate the issues relating to their interest in the Eureka Property in the Flathead County dissolution proceedings. The District Court noted that the Kubackis knew of the pending dissolution and that, while they were not obligated to intervene in the dissolution, they certainly had the opportunity to do so. The District Court rejected the notion that the Kubackis could retain the status of "non-parties" by not intervening in Flathead County, and then later on attack the Flathead County judgment in Lincoln County, concluding they had a full and fair opportunity to protect their property interests in the dissolution proceeding.

¶14 On appeal, the Kubackis argue that the District Court erred in its application of collateral estoppel to their action to quiet title in Lincoln County. We agree. In

---

[2] On appeal, the Kubackis argue that the District Court failed to consider their argument that the first element was not satisfied as well. Because we conclude that all the elements of collateral estoppel have not been satisfied here, we need not reach this question in order to resolve the dispute before us.

7

particular, we find that as a result of Melissa's failure to name the Kubackis as parties to the dissolution action and serve them with a summons, the Kubackis did not have a full and fair opportunity to litigate their interests in the Eureka Property as required under the doctrine of collateral estoppel. Because collateral estoppel will preclude subsequent litigation only if all four elements are satisfied, we hold that the District Court incorrectly concluded this doctrine barred the Kubackis' quiet title action in Lincoln County.

¶15    Although the Kubackis received notice for the show cause hearing of February 14, 2006, via the U.S. mail, they were never named as parties or served with a summons in the underlying proceeding; thus, they were never presented a full and fair opportunity to litigate their rights and interests in the Eureka Property before the District Court. When a court entertains litigation which could terminate the real estate interests of third parties, the "full and fair opportunity to litigate" element of collateral estoppel requires, at a minimum, that they be made parties to the proceedings and served with notice of the fact that their interests in their real property could be affected. *See Blonder-Tongue Laboratories, Inc. v. University of Ill. Found.*, 402 U.S. 313, 329, 91 S. Ct. 1434, 1443 (1971) (stating that due process concerns preclude the application of collateral estoppel against parties who have not appeared in the prior action).

¶16    Here, Melissa sought a dissolution decree which affected the Kubackis' interests in the Eureka Property. Since Melissa sought a dissolution decree which would terminate the Kubackis' rights in the Eureka Property, she should have served them and named them as parties if she wished the decree to bind them. In this regard, the case at bar is distinguishable from our recent opinion in *In Re the Marriage of Heidema*, 2007 MT 20,

8

335 Mont. 362, 152 P.3d 112. In that case, a ranch hand (Faw), who had been injured during the course of his employment, filed suit against two partnerships which employed him in order to recover damages for his injuries. *Heidema*, ¶ 3. Soon after this suit was commenced, two of the spouses of the partners in these partnerships filed for dissolutions of their marriages. *Heidema*, ¶ 4. Faw contended the dissolutions were a sham and only commenced in order to protect the spouses' assets in the event his suit was successful. *Heidema*, ¶ 4. Upon his motion, the District Court permitted Faw to intervene in the dissolution to adjudicate his interests. *Heidema*, ¶ 5.

¶17 During the dissolution proceedings, Faw asked the District Court to appoint a receiver to take control of the marital assets in order to prevent their dissipation. *Heidema*, ¶ 4. Additionally, Faw asked the District Court to compel financial disclosures from the parties concerning the assets of their marital estates. Before the District Court ruled on Faw's requests, the parties reached a settlement which the District Court approved over Faw's objections. Faw appealed the District Court's entry of the decree of dissolution, arguing that the District Court precluded him from exercising his rights to participate in the dissolution proceedings. *Heidema*, ¶ 10.

¶18 We rejected Faw's appeal and affirmed the District Court. In our decision we questioned the wisdom of allowing Faw to intervene in the dissolution proceedings in the first place. *Heidema*, ¶ 11. We found that Faw was not prejudiced by the District Court's entry of the decree, primarily because he was a stranger to the dissolution proceedings. "In a dissolution proceeding, the only proper parties are the spouses seeking to be divorced." *Heidema*, ¶ 13. In disposing of Faw's appeal, we seemed to imply that it was

9

improper to join third parties in dissolution proceedings, stating "Faw's request for relief, that assets be entrusted to third parties, exceeds the jurisdiction of the court. In a dissolution proceeding, the court has authority to apportion marital assets only between the parties." *Heidema*, ¶14. While generally speaking this is true, the Uniform Marriage and Divorce Act, Title 40, Chapters 1 through 4, MCA, does empower district courts in dissolution proceedings to join additional parties when necessary to carry out their duties under that act. See § 40-4-105(5), MCA ("The court may join additional parties proper for the exercise of its authority to implement this chapter.").

¶19 Faw's participation was not necessary for the District Court to resolve the dissolution proceedings before it and distribute the assets of the marital estate. This fact distinguishes *Heidema* from the case at bar, because here the Kubackis are the title holders of property which the District Court decided should be included in the marital estate; thus, the District Court concluded it should terminate the Kubackis' right and title in the Eureka Property. Under such circumstances, the District Court could have joined the Kubackis as parties in the dissolution proceedings, our holding in *Heidema* notwithstanding.

¶20 Returning to the issue before us, the act of serving Rebecca Kubacki with a subpoena to testify about her involvement in the hiding of William's marital assets, without naming her as a party or serving her with a summons, was insufficient to bind her under the doctrine of collateral estoppel. Under the doctrine, in order to preclude subsequent litigation, the "full and fair opportunity to litigate" element requires more

10

than the mere receipt of a summons to appear as a witness in a proceeding involving other persons.

¶21 Furthermore, we disagree with the suggestion that the Kubackis' appearance to contest personal jurisdiction on February 20, 2006, indicates that they had a full and fair opportunity to litigate the status of their rights in the Eureka Property. In the first instance, the Kubackis have the right to challenge jurisdiction under M. R. Civ. P. 12(b)(2), without thereby submitting themselves to the jurisdiction of the District Court. *Semenza v. Kniss*, 2005 MT 268, ¶ 17, 329 Mont. 115, ¶ 17, 122 P.3d 1203, ¶ 17. Moreover, the Kubackis' appearance came in connection with a show cause order which they received via the U.S. mail. Obviously, by the time the Kubackis received this order, the District Court in Flathead County had already ruled that the Eureka Property would be included in the marital estate, and that it had the power to terminate the Kubackis' interests in that property. As a result, it can hardly be said that they had a full and fair opportunity to litigate this issue before it was decided.

¶22 While the District Court faulted the Kubackis for failing to intervene in the dissolution proceeding and retaining their status as "non-parties," intervention was not their obligation. It was Melissa who sought to invoke the power of the District Court in Flathead County to compel the conveyance of the Eureka Property to her as part of the marital estate. Because the Kubackis held title to that property, Melissa should have sought their joinder or the District Court should have ordered it. Either way, the Kubackis should have been made parties to the dissolution before the Flathead County District Court could assert the legal authority to terminate their property interests. In this

regard, we note the cases cited by Melissa in support of the Flathead County District Court's actions are distinguishable because they all involved individuals who were actual parties to court proceedings.

¶23 For these reasons, we conclude that the Kubackis did not have a "full and fair opportunity" to litigate their property ownership in the Flathead County action. Therefore, we hold that the District Court erred in concluding that all of the elements of collateral estoppel were satisfied and that the doctrine precluded the Kubackis from pursuing a quiet title action in the District Court in Lincoln County. We express no opinion as to the merits of Kubackis' quiet title action.

## CONCLUSION

¶24 Because we conclude that collateral estoppel does not preclude the Kubackis from pursuing their quiet title action, we reverse the District Court's decision and remand for further proceedings.

/S/ PATRICIA COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ JIM RICE