DA 07-0363

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 159

KENNETH McDANIEL,

      Plaintiff and Appellant,

  v.

STATE OF MONTANA,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 2005-975C
Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Russell K. Jones, Attorney at Law, Spokane, Washington

      For Appellee:

        Rebekah French, Risk Management and Tort Defense Division,
Helena, Montana

        Mikel L. Moore, Christensen, Moore, Cockrell, Cummings & Axelberg,
P.C., Kalispell, Montana

                             Submitted on Briefs: May 21, 2008

                                 Decided: May 11, 2009

Filed:

            _____
                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kenneth McDaniel filed this action against the State of Montana in the Eleventh Judicial District Court, Flathead County, alleging breach of contract and deprivation of property without procedural due process. The District Court denied McDaniel's motion for partial summary judgment, granted the State's motion for summary judgment, and dismissed the action on the ground that the State was entitled to prevail on a defense of prosecutorial immunity. McDaniel now appeals. For the reasons detailed below, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

¶2 McDaniel pleaded guilty in June 2003 to the offense of burglary, a felony, and the District Court sentenced him in July 2003 to the Montana State Prison for a period of 20 years. The court suspended the entire 20-year sentence, subject to a number of conditions, and ordered McDaniel to submit to the supervision of the Adult Probation and Parole Bureau of the Montana Department of Corrections ("DOC").

¶3 On November 20, 2003, McDaniel's probation officer gave him a random drug test, which came back positive for cocaine. That same day, McDaniel signed a Substance Abuse Admission Form in which he admitted having used cocaine. But rather than file a report of violation with the Flathead County Attorney's Office, McDaniel's probation officer elected instead to initiate an intervention hearing under § 46-23-1015, MCA. That provision states that "[a] probation and parole officer who reasonably believes that a probationer has violated a condition of probation may initiate an informal probation violation intervention hearing to gain the probationer's compliance with the conditions of

2

probation without a formal revocation hearing under 46-18-203." Section 46-23-1015(1), MCA (2003). A hearings officer designated by the DOC conducts the intervention hearing. Section 46-23-1015(2), MCA.

¶4 The intervention hearing in McDaniel's case was held December 9, 2003. At the conclusion of the hearing, McDaniel, his probation officer, and the hearings officer signed an Intervention Hearing Agreement, which stated as follows:

This is an Agreement between
The State of Montana, Department of Corrections
Adult Probation & Parole
and
Kenneth Glen McDaniel

I[,] Kenneth Glen McDaniel[,] understand and agree to the following conditions in lieu of a formal violation being filed at this time.

1. You will immediately be placed on Level 1 supervision for a minimum of six (6) months and report as directed.

2. You will immediately begin court ordered anger management counseling. You will have no unexcused absences and you will participate as required in all sessions, homework, etc.

3. You will immediately begin attending AA/NA meetings and utilize an AA/NA log as directed by your P.O. You will attend a minimum of two (2) AA/NA meetings weekly for a minimum of one (1) year and thereafter as directed by your P.O.

4. You will not be allowed any travel permits whatsoever until you have completed anger management counseling, maintained AA/NA meetings as directed, secured and maintained acceptable employment, and have shown a regular monthly payment record towards court ordered financial obligations.

¶5 Shortly thereafter, a Deputy Flathead County Attorney learned "informally" that the DOC had conducted an intervention hearing with McDaniel. The prosecutor obtained

3

McDaniel's file from the regional Probation and Parole Office and, on December 16, 2003, filed a Petition for Revocation of Suspended Sentence in the District Court. The basis of this petition was McDaniel's admitted use of cocaine, i.e., the same probation violation upon which the Intervention Hearing Agreement was based.

¶6 The District Court issued a bench warrant, and McDaniel was arrested and jailed. He then filed two motions to dismiss the petition for revocation. In the first, he argued that the intervention hearing and the Intervention Hearing Agreement constituted a final adjudication of his probation violation, including the appropriate sanction for the violation, and that the State, therefore, was barred by res judicata from relitigating the matter. In the second, he asserted that filing the petition for revocation constituted a breach of the Intervention Hearing Agreement. The prosecutor correspondingly filed two briefs opposing McDaniel's motions. He argued that the elements of res judicata were not satisfied. Furthermore, he argued that "the State" had not attended the intervention hearing and, consequently, that "[i]t is absolutely false that the State ever entered into an agreement with [McDaniel] regarding [McDaniel's] violating the terms of his probation."

¶7 The District Court held a hearing on McDaniel's motions in May 2004 and entered its Findings of Fact, Conclusions of Law, and Order on Motion to Dismiss on October 29, 2004. In brief, the court determined as follows: the State of Montana, acting through the DOC, was a party to the intervention hearing; the Intervention Hearing Agreement was "a valid, binding agreement" between McDaniel and the State; McDaniel agreed to comply with four conditions "in lieu of a formal violation being filed at this time"; and as of the May 2004 hearing, McDaniel had "fully complied" with these conditions. The court

4

concluded that "the State got what it bargained for: compliance thereafter by [McDaniel] with the rules of probation, as amended in the agreement, and there is no valid argument that [McDaniel] is NOT entitled to get what he bargained for: that the intervention agreement was 'in lieu of a formal violation being filed.' " Thus, the court granted McDaniel's motions to dismiss the petition for revocation. The State did not appeal.

¶8 McDaniel filed the instant action on December 30, 2005, asserting two claims: first, that the State breached a written contract with McDaniel when it filed the petition to revoke his suspended sentence; and second, that the State deprived McDaniel of "his property in the benefits of the written contract and administrative decision" without procedural due process of law in violation of Article II, Section 17 of the Montana Constitution. McDaniel alleged damages "including 33 days loss of physical liberty, loss of income, $4,000.00 bondsman fee, $5,900.00 attorney fee, public obloquy, and emotional upset."

¶9 The State removed the action to the United States District Court for the District of Montana in February 2006; however, the federal court determined that it lacked subject-matter jurisdiction and, thus, granted McDaniel's motion for remand to the Eleventh Judicial District Court in August 2006. The parties thereafter filed cross-motions for summary judgment. Relying on collateral estoppel (issue preclusion), McDaniel asserted that he was entitled to judgment as a matter of law respecting the State's liability on his breach of contract and procedural due process claims. He argued that this issue had already been adjudicated and resolved (in his favor) in the revocation proceedings. The State, however, argued that it was "immune from civil liability for conduct preformed by

5

a prosecutor acting within the scope of his duties." Thus, the State concluded it was entitled to summary judgment on both of McDaniel's claims.

¶10 The District Court entered its Order and Rationale on Cross-Motions for Summary Judgment on May 7, 2007. Agreeing with the State's theory of prosecutorial immunity, the court first reasoned that "[a]lthough McDaniel's lawsuit is against the State of Montana and he argues that the State breached a contract with him, the basis of his complaint rests on actions taken by the Flathead County Deputy Attorney." The court then observed that "prosecutors enjoy immunity for actions taken in the course of their official duties." Lastly, citing *Ronek v. Gallatin County*, 227 Mont. 514, 740 P.2d 1115 (1987), the court stated that "such immunity extends to counties, the State and its agencies." Accordingly, on this basis, the court granted the State's motion for summary judgment and denied McDaniel's motion for partial summary judgment.

¶11 McDaniel now appeals.

## ISSUES

¶12 McDaniel raises two issues on appeal:

1. Did the District Court err in granting the State's motion for summary judgment based on its prosecutorial immunity defense?

2. Did the District Court err in denying McDaniel's motion for partial summary judgment with respect to the State's liability?

## STANDARD OF REVIEW

¶13 We review a district court's ruling on a motion for summary judgment de novo, applying the criteria set forth in M. R. Civ. P. 56. *Corporate Air v. Edwards Jet Center*

6

*Montana*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111. The moving party has the initial burden of establishing both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *Corporate Air*, ¶ 25. The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences are to be drawn therefrom in favor of the party opposing summary judgment. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 12, 344 Mont. 540, 189 P.3d 615. If the moving party meets its initial burden, then the burden shifts to the nonmoving party to establish with substantial evidence, as opposed to mere denial, speculation, or conclusory statements, that a genuine issue of material fact does exist. *Peterson*, ¶ 13. If no genuine issue of material fact exists, then the court determines whether the moving party is entitled to judgment as a matter of law. *Corporate Air*, ¶ 25. This determination is a conclusion of law, which we review for correctness. *Corporate Air*, ¶ 25.

## DISCUSSION

¶14 *Issue 1. Did the District Court err in granting the State's motion for summary judgment based on its prosecutorial immunity defense?*

¶15 There is no dispute in this appeal that the probation officer and the hearings officer were acting as agents of the State of Montana when they signed the Intervention Hearing Agreement; that McDaniel agreed to four conditions "in lieu of a formal violation being filed at this time"; and that the Deputy Flathead County Attorney was acting as an agent of the State of Montana when he filed the petition to revoke McDaniel's suspended sentence.

7

¶16 In defending against McDaniel's breach of contract and procedural due process claims arising out of these events, the State asserted, among other things, that the Intervention Hearing Agreement was not an enforceable contract. The State still maintains that position; however, the State contends that we do not reach the questions of contract enforceability and breach because the State is, in any event, immune from suit. The State does not claim that it is always immune from suit on breach of contract and procedural due process claims. Rather, the State's position is that it is immune from suit on such claims when the state agent whose act constitutes the alleged breach of contract or deprivation of property is a prosecutor acting within the scope of his duties. While McDaniel challenges this theory on a number of grounds, we conclude that the following points are sufficient to resolve this issue.

¶17 The foundation for the State's immunity analysis is the premise that the Deputy County Attorney is entitled to absolute prosecutorial immunity for filing the petition for revocation on December 16, 2003. *See Ronek v. Gallatin County*, 227 Mont. 514, 516, 740 P.2d 1115, 1116 (1987) ("The prosecutor is a quasi-judicial officer who enjoys common law immunity from civil liability for conduct within the scope of his duties."); *State ex rel. Dept. of Justice v. District Court*, 172 Mont. 88, 92, 560 P.2d 1328, 1330 (1976) ("When a prosecutor acts within the scope of his duties by filing and maintaining criminal charges he is absolutely immune from civil liability, regardless of negligence, or lack of probable cause."). The State argues that it can assert this prosecutorial immunity as its own defense to McDaniel's claims. In other words, the State seeks to "extend" the Deputy County Attorney's immunity to itself. The State contends that prosecutorial

immunity is not limited "to those circumstances where a prosecutor faces personal liability for prosecutorial conduct," but also extends to the prosecutor's governmental employer. In short, the State advances a theory of derivative immunity. *Cf. Lutheran Day Care v. Snohomish County*, 829 P.2d 746, 751 (Wash. 1992) ("Any immunity the municipality might have is only derivative from or secondary to that individual [quasi-judicial] immunity [of its employees]." (emphasis omitted)).

¶18 One of the flaws in this theory, as McDaniel points out, is that the State seeks to "extend" prosecutorial immunity that the Deputy County Attorney himself would never be in a position to assert in the first place. The State contends repeatedly that the Deputy County Attorney enjoys immunity for filing the petition for revocation. Yet, while that may be true in other circumstances, it is irrelevant with respect to the specific claims alleged by McDaniel—namely, breach of contract and deprivation of property arising out of that breach. Neither of these claims has been—or could be—brought against the Deputy County Attorney for the simple reason that the prosecutor was not a party to the contract that McDaniel claims was breached. Indeed, McDaniel acknowledges that the prosecutor has no liability for breach of the Intervention Hearing Agreement. Rather, he contends, "the breach is the breach of the state, and not the breach of its agent."[1]

¶19 McDaniel argued this point in the District Court:

---

[1] The State asserts that we should not consider McDaniel's "agency argument" because it is being raised for the first time on appeal. This assertion is without merit. Although this Court generally will not address an issue raised for the first time on appeal, *In re T.C.*, 2008 MT 335, ¶ 20, 346 Mont. 200, 194 P.3d 653, McDaniel made his "agency argument" during the summary judgment proceedings (some of which is quoted in ¶ 19, *infra*).

[Y]ou never reach the issue of immunity from breach of contract. You never get there because the prosecutor was not a party to this contract, the contract was made by the State. In order for a prosecutor -- or in order for anyone to breach a contract that person must be a party to the contract. If the party -- if that person is not a party to the contract then that person can have no liability for breach. And if there's no breach, no liability, then you never get to the issue as to whether or not there is immunity from liability.

¶20    For the State to "extend" the Deputy County Attorney's prosecutorial immunity to itself, the State must first establish that the Deputy County Attorney could raise prosecutorial immunity as a defense to McDaniel's claims if they were brought against him. *Cf. Lutheran Day Care*, 829 P.2d at 755 ("[I]t is apparent that if the immunity of individual officers is in question, then the immunity of the local government which employs them is certainly in question."). Yet, there is no factual or legal basis for McDaniel to bring his contract-based claims against the Deputy County Attorney. Thus, there being no possible occasion for the prosecutor to assert prosecutorial immunity to McDaniel's claims, there is no basis for the State to extend such immunity to itself.

¶21    The State's arguments for extending prosecutorial immunity in this case reflect a misreading of McDaniel's claims. Those claims are not premised on any notion that the prosecutor's act of filing the petition for revocation was wrongful in itself. McDaniel does not contend that the prosecutor lacked probable cause; he does not contend that the prosecutor acted maliciously or defamed him; he does not contend that the prosecutor acted outside the scope of his duties; he does not seek to hold the State liable for the prosecutor's conduct under a theory of respondeat superior; and he does not seek to circumvent the doctrine of prosecutorial immunity by suing the State in lieu of the prosecutor. In short, the propriety of the prosecutor's action vis-à-vis any duty or

10

obligation the prosecutor himself may have owed to McDaniel is simply not implicated by McDaniel's breach of contract and procedural due process claims against the State.

¶22    Rather, McDaniel's claims are based on the alleged failure of the State itself to perform the terms of its alleged contract with McDaniel.  Specifically, McDaniel claims that the State agreed not to file a formal violation, so long as he complied with certain conditions, but then, one week later, the State turned around and filed a formal violation, even though McDaniel was complying with the terms of their agreement.  Restated, McDaniel claims that the State made him a promise, in writing, and then broke that promise, causing him damages.  The State cites no authority for the proposition that the doctrine of prosecutorial immunity permits the State to avoid its contractual obligations.

¶23    In this connection, although McDaniel raised the point in the District Court, the State has failed to reconcile its assertion of prosecutorial immunity in this case with the Legislature's unambiguous statement in § 18-1-404(1)(a), MCA (2003), that "[t]he state of Montana is liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances . . . ."  The State proffers that sovereign immunity and prosecutorial immunity are different concepts and are supported by different considerations of public policy.  Yet, while this statement is correct, *see Dept. of Justice,* 172 Mont. at 92, 560 P.2d at 1330, it is inapposite.  The ultimate *result* of the State's exercise of prosecutorial immunity in this case would be functionally equivalent to the State's exercise of sovereign immunity:  In either case, the State could not be held liable in respect to an alleged contract, contrary to the affirmative mandate of § 18-1-404(1)(a), MCA.  *Cf. Orr v. State*, 2004 MT 354, ¶ 55, 324 Mont. 391, 106 P.3d

11

100 (observing that the defense of sovereign immunity does not mean there is no duty; rather, the breach of duty is simply not actionable against the sovereign). Thus, since "the legislature intended . . . to waive the State's immunity as to express contracts," *Peretti v. State*, 238 Mont. 239, 245, 777 P.2d 329, 333 (1989), it is incongruous for the State to assert immunity as a defense to an alleged express contract in this case.

¶24 The State relies on our observation in *Rosenthal v. County of Madison*, 2007 MT 277, 339 Mont. 419, 170 P.3d 493, that "we have extended the doctrine of prosecutorial immunity to include county and state governments employing the prosecutors who find themselves named defendants in tort actions." *Rosenthal*, ¶ 25 (citing *Ronek*, 227 Mont. at 517-19, 740 P.2d at 1116-18, and *Koppen v. Board of Medical Examiners*, 233 Mont. 214, 220, 759 P.2d 173, 176 (1988)). McDaniel counters that these cases are not on point or, alternatively, that we should "reexamine" the cases. Based on our analysis above, however, we need not resolve these arguments. The Deputy County Attorney is not a named defendant to McDaniel's contract-based claims. Moreover, neither of these claims could be brought against the Deputy County Attorney, given that he was not a party to the contract that McDaniel claims was breached. Thus, as explained above, there being no possible occasion for the prosecutor to assert prosecutorial immunity to McDaniel's claims, there is no basis for the State to extend such immunity to itself.

¶25 In conclusion, the State has provided no basis in law or in fact for the State to assert, much less prevail on, a defense of prosecutorial immunity to McDaniel's breach of contract and procedural due process claims. The District Court's contrary conclusion and the grant of summary judgment in favor of the State are, accordingly, reversed.

¶26  ***Issue 2.  Did the District Court err in denying McDaniel's motion for partial summary judgment with respect to the State's liability?***

¶27  McDaniel argues that he is entitled to partial summary judgment with respect to the State's liability on his breach of contract and procedural due process claims.  He bases this argument on principles of issue preclusion (collateral estoppel).[2]

¶28  Issue preclusion bars a party from reopening an issue that was litigated and determined in a prior suit.  *Baltrusch v. Baltrusch*, 2006 MT 51, ¶ 15, 331 Mont. 281, 130 P.3d 1267.  We apply a four-element test to determine whether relitigation of an issue is barred:

1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?

2. Was there a final judgment on the merits in the prior adjudication?

3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*See Baltrusch*, ¶ 18; *Kubacki v. Molchan*, 2007 MT 306, ¶ 12, 340 Mont. 100, 172 P.3d 594; *Dowell v. Dept. of Public Health and Human Services*, 2006 MT 55, ¶¶ 34-35, 331 Mont. 305, 132 P.3d 520; *In re Raymond W. George Trust*, 1999 MT 223, ¶ 42, 296 Mont. 56, 986 P.2d 427.  All four of these elements must be met.  *See Baltrusch*, ¶ 18; *Kubacki*, ¶ 12.

---

[2] To promote clarity, the trend has been to use the terms "claim preclusion" and "issue preclusion" in lieu of "res judicata" and "collateral estoppel," respectively.  *See Gann v. William Timblin Transit, Inc.*, 522 F. Supp. 2d 1021, 1026 n. 3 (N.D. Ill. 2007); *Northern States Power Co. v. Bugher*, 525 N.W.2d 723, 727 (Wis. 1995); *Migra v. Warren City School Dist.*, 465 U.S. 75, 77 n. 1, 104 S. Ct. 892, 894 n. 1 (1984).

¶29    Here, the prior adjudication relied on by McDaniel is the revocation proceeding initiated by the State on December 16, 2003, and terminated by the District Court's Order on Motion to Dismiss on October 29, 2004. The issues to which McDaniel seeks to apply issue preclusion are whether the State breached an enforceable contract and whether the State deprived him of property without procedural due process of law. He clarifies that he is seeking judgment as a matter of law with respect to liability only and that damages remain to be determined on remand.

¶30    McDaniel lumps his breach of contract and deprivation of property claims into one analysis. With respect to the first element of the issue preclusion test, he argues that the question of the State's liability for breach of contract and violation of procedural due process were decided within the context of his motions to dismiss the State's petition for revocation. He points to arguments made by the State in its briefs opposing McDaniel's motions, to proposed findings of fact and conclusions of law submitted by McDaniel and the State, and to the District Court's actual findings of fact and conclusions of law in its October 2004 order. Based on these, McDaniel contends that "a contract, breach, and due process were at issue in the revocation proceeding. The issues were joined, briefed, argued, and resolved by the court." McDaniel further contends that the instant action involves the same contract, the same breach, the same due process violation, and the same issues.

¶31    As for the second element, McDaniel argues that the District Court's order dismissing the State's petition for revocation constituted a final judgment on the merits of the State's liability for breach of contract and violation of procedural due process.

14

Respecting the third element, McDaniel notes that the party against whom preclusion is asserted (the State) was a party to the prior adjudication. Finally, regarding the fourth element, McDaniel argues that the State, represented by counsel, "participated fully" in the revocation proceeding and had an adequate opportunity and incentive to litigate the breach of contract and procedural due process issues.

¶32    In response, the State concedes the third element, i.e., that it was a party to the prior adjudication. The State argues, however, that McDaniel's argument fails on the first, second, and/or fourth elements. For the reasons which follow, we agree with the State as to McDaniel's procedural due process claim, but not with respect to his breach of contract claim. We address the breach of contract claim first.

**McDaniel's Breach of Contract Claim**

¶33    *Element 1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?* To determine whether the issue decided in the prior adjudication is identical to the issue raised in the present case, we compare the pleadings, evidence, and circumstances surrounding the two actions. *Baltrusch*, ¶ 25; *Holtman v. 4-G's Plumbing & Heating, Inc.*, 264 Mont. 432, 439, 872 P.2d 318, 322 (1994). But we do not equate an issue with "elements of a cause of action"; rather, the bar that arises from collateral estoppel extends to all questions essential to the judgment and actively determined by a prior valid judgment. *Baltrusch*, ¶ 25; *Haines Pipeline Constr., Inc. v. Montana Power Co.*, 265 Mont. 282, 288, 876 P.2d 632, 636 (1994). Moreover, collateral estoppel prevents relitigation of determinative facts which were actually or necessarily decided in a prior action. *Baltrusch*, ¶ 25; *Haines*, 265 Mont. at 288, 876

15

P.2d at 636. A litigant cannot avoid preclusion by reframing the issue or raising novel contentions. *Baltrusch*, ¶ 25. " 'If a new legal theory or factual assertion put forward in the second action is related to the subject-matter and relevant to the issues that were litigated and adjudicated previously, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged.' " *Haines*, 265 Mont. at 288-89, 876 P.2d at 636-37 (some internal quotation marks omitted) (quoting *Moore's Federal Practice*, vol. 1B, ¶ 0.443[2], 760). Consistent with the purpose of promoting judicial economy, we apply collateral estoppel when the issues are so intertwined that to decide the issue before it, the district court would have to rehear the precise issue previously decided. *Baltrusch*, ¶ 25; *Martelli v. Anaconda-Deer Lodge County*, 258 Mont. 166, 169, 852 P.2d 579, 581 (1993).

¶34    As to the issue of whether the State is liable for breach of an enforceable contract, we agree with McDaniel that this issue was decided in the prior adjudication. In his second motion to dismiss, McDaniel asserted that filing the petition for revocation constituted a breach of the Intervention Hearing Agreement—specifically, the clause stating that McDaniel "agree[s] to the following conditions *in lieu of a formal violation being filed at this time*" (emphasis added). The State responded that "[t]he State did not attend the [intervention] hearing" and that "[i]t is absolutely false that the State ever entered into an agreement with the Defendant regarding the Defendant violating the terms of his probation." Following the District Court hearing in May 2004, the parties submitted proposed findings of fact and conclusions of law. McDaniel proposed a conclusion of law which stated: "The intervention hearing agreement is a contract by the

16

state with defendant. The state's subsequent petition for revocation is a breach of contract." By contrast, the State offered the following: "the State was not represented at the [intervention] hearing"; "the State of Montana and the Department of Corrections are not the same party nor are they a privy"; and "no agreement existed between the Defendant and the Department of Corrections or the State regarding admitting the alleged [probation] violation."

¶35 The District Court did not agree with the State's position. Rather, it entered the following pertinent findings of facts and conclusions of law:

• "The State of Montana, acting through the Department of Corrections Adult Probation & Parole, was clearly a party to the intervention hearing."

• "The contention of the Flathead County Attorney's Office that the State was not a party, nor was its interest represented, because the County Attorney's Office did not participate in the hearing, is simply not accurate."

• "[T]he party in this litigation is the State of Montana, not the Flathead County Attorney's Office, and the officers involved [at the intervention hearing] had absolutely no authority or capacity to perform their job as they did herein other than as agents of the State of Montana."

• "There was a valid, binding agreement between the Defendant and the State of Montana with which the Defendant has fully complied."

• "The clear intent of the Legislature [expressed in § 46-23-1015(1), MCA,] is that if an intervention hearing is initiated, and if the probationer's compliance with the conditions of probation is 'gain[ed],' there would not then be a 'formal revocation hearing under 46-18-203,' for the same violation" (second brackets in original).

• "By the terms of the agreement, the State got what it bargained for: compliance thereafter by the Defendant with the rules of probation, as amended in the agreement, and there is no valid argument that the Defendant is NOT entitled to get what he bargained for: that the intervention agreement was 'in lieu of a formal violation being filed.' "

17

• "The State had the opportunity in the intervention hearing to address and resolve the issue of what consequences should be imposed upon the Defendant for his violation of the conditions of probation, and the issue was resolved. By the clear terms of the statute and the intervention hearing agreement, the State cannot now, for the same violation, initiate litigation intended to resolve that issue with a different result."

As noted, the State did not appeal from the District Court's order.

¶36 The conclusion that the State breached an enforceable agreement is inescapable in light of the District Court's findings of fact and conclusions of law. The court determined that the State and McDaniel had entered "a valid, binding agreement" and that the terms of this agreement, when read in conjunction with the controlling statute (§ 46-23-1015(1), MCA), precluded the State from initiating a formal revocation hearing so long as McDaniel complied with the agreement. McDaniel did comply with the agreement; thus, the State had a contractual obligation not to initiate a formal revocation hearing arising out of the same probation violation. Nevertheless, the State initiated a formal revocation hearing. Accordingly, the terms of the agreement were breached.

¶37 The State contends that the issue decided by the District Court in the revocation proceeding "was whether the State could revoke McDaniel's suspended sentence based on his admission to violating his probation by using cocaine when that admission was made during an informal probation violation intervention hearing." This is patently incorrect. The District Court did not even reach the question of whether McDaniel's admission during the intervention hearing was sufficient to revoke his suspended sentence. What the District Court decided, rather, was that the State had the opportunity at the intervention hearing to address and resolve the issue of what consequences should

18

be imposed upon McDaniel for his probation violation; this issue was resolved at the intervention hearing; and "[b]y the clear terms of the statute and the intervention hearing agreement, the State cannot now, for the same violation, initiate litigation intended to resolve that issue with a different result."

¶38     The State also asserts that the District Court "did not decide the issue raised by McDaniel in this case – whether he could recover damages from the State's alleged breach of contract." But this likewise misstates the relevant issue. McDaniel does not claim that he is entitled to partial summary judgment on the issue of damages. He claims that he is entitled to partial summary judgment on the issue of liability. We accordingly disagree with the State that the first element of the issue preclusion test is not met.

¶39     *Element 2. Was there a final judgment on the merits in the prior adjudication?* To determine whether a final judgment on the merits has been reached, we look to see if the issue was actually litigated and adjudged as shown on the face of the judgment. *Lane v. Farmers Union Ins.*, 1999 MT 252, ¶ 41, 296 Mont. 267, 989 P.2d 309. Before giving preclusive effect to a judgment or order, " 'the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered[, and should refuse preclusion] if the decision was avowedly tentative.' " *Baltrusch*, ¶ 22 (brackets in *Baltrusch*) (quoting *Restatement (Second) of Judgments* § 13 cmt. g (1982)).

¶40     Here, the District Court's October 2004 decision in relation to the State's obligations and conduct under the terms of the Intervention Hearing Agreement was adequately deliberated. The parties were fully heard on this issue not only in their

19

respective briefs and proposed findings of facts and conclusions of law, but also at the May 2004 hearing. The court supported its decision with a reasoned opinion, consisting of 11 Findings of Fact and 10 Conclusions of Law. The court's order conclusively determined the issue of the State's failure to abide by its obligation under the Agreement not to initiate a formal revocation hearing. The court dismissed the State's petition for revocation, and the revocation proceedings were thereby concluded. The court's decision was firm, not avowedly tentative, and it was subject to appeal, though the State did not avail itself of this option. *See* M. R. App. P. 1(b)(1) (2003); *State v. Finley*, 2003 MT 239, ¶ 29, 317 Mont. 268, 77 P.3d 193.

¶41 The State contends that the second element is not satisfied because "there was no final adjudication of [McDaniel's] civil claim for damages in the probation revocation proceeding." Again, however, McDaniel is seeking partial summary judgment on liability, not damages. The State cites no authority for its single-sentence assertion that the District Court's October 2004 order was not a final judgment on the State's liability for breaching the Intervention Hearing Agreement because the court did not also address what damages McDaniel is entitled to. We conclude that the second element is met.

¶42 *Element 4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?* Because the State concedes Element 3, we proceed to the fourth. The burden is on the party attempting to defeat the application of issue preclusion to establish the absence of a full and fair opportunity to litigate. *Baltrusch*, ¶ 18. As the foregoing discussion reflects, the State was afforded a full and fair opportunity to litigate the issues of whether the Intervention

20

Hearing Agreement was an enforceable contract and whether the State's filing the petition for revocation was in breach of that Agreement. Indeed, these are exactly the issues the State litigated in response to McDaniel's second motion to dismiss. Nevertheless, the State contends that this element is not satisfied because "the State had no opportunity to raise its defenses . . . to McDaniel's civil damage claims." The State identifies prosecutorial immunity, lack of consideration, invalid contract, and superseding and intervening cause as defenses it purportedly had no opportunity to raise.

¶43 We disagree with the State's contention. First, the issues addressed by the District Court's October 2004 order and raised by McDaniel in his breach of contract claim are whether the State made an enforceable promise in the Intervention Hearing Agreement and whether it failed to fulfill that promise. The defense of prosecutorial immunity has nothing to do with these issues. Rather, this defense, if it applied, would entitle the State to dismissal of the action without ever reaching the issue of contract enforceability and breach, which the State itself acknowledges at the outset. *Cf. Orr v. State*, 2004 MT 354, ¶ 55, 324 Mont. 391, 106 P.3d 100 ("Immunity is a matter of avoidance, an affirmative defense. . . . The sovereign immunity defense does not mean that there is an absence of duty; rather, at the time that the immunity defense exists, the breach of duty is simply not actionable against the sovereign."). Moreover, in any event, the State has raised and fully argued its prosecutorial immunity defense within the context of the instant action.

¶44 Second, while the State claims that its other enumerated defenses "were not raised in the probation revocation proceedings," the fact is that the State did argue contract

invalidity due to lack of consideration. Specifically, as recited in the District Court's order, the State argued that the Intervention Hearing Agreement did not contain "any additional requirement of probation that the Defendant was not previously subjected to by the Judgment and Sentence dated July 28, 2003, nor any condition that the Department of Probation and Parole, prior to the occurrence of the alleged violation or the intervention hearing, did not have the authority to impose on the Defendant."

¶45 Lastly, the fact that a party did not raise certain defenses in the prior adjudication does not necessarily mean that the party has been denied a full and fair "opportunity" to litigate the issue to be barred. *Baltrusch*, ¶ 18. Here, the issue of the State's liability for breach of an enforceable contract unquestionably was raised, briefed, and argued in the prior adjudication. That the State did not raise certain defenses to this issue at the time does not mean it did not have the *opportunity* to litigate its liability for breach of contract and to raise these defenses.

¶46 In sum, all four elements of issue preclusion are satisfied with respect to the State's liability on McDaniel's breach of contract claim. There are no genuine issues of material fact, and McDaniel is entitled to judgment as a matter of law on this specific issue. We accordingly reverse the District Court's judgment denying McDaniel's motion for partial summary judgment on the State's liability for breach of contract.

### McDaniel's Procedural Due Process Claim

¶47 With respect to McDaniel's due process claim, we agree with the State that McDaniel's argument fails on the first and fourth elements. While McDaniel portrays the District Court's inclusion of due process considerations in its analysis as an adjudication

22

of the State's liability for a procedural due process violation, the fact is that the court referred to "due process" as a requirement of *conducting revocation proceedings*, not *depriving a person of property*. Specifically, quoting *State v. Finley*, 2003 MT 239, ¶ 29, 317 Mont. 268, 77 P.3d 193, the District Court observed that "[t]he minimum requirements of due process apply to sentence revocation hearings, and '[t]he foundation of the guarantee of due process is fairness, which calls for safeguards tailored to the demands of the particular legal context of probation revocation' " (second brackets in original).

¶48 It is true the District Court also stated that "[w]ithin the due process guarantee of fairness, 'safeguards tailored to the demands of the particular legal context of probation revocation' include the requirement that the State also comply with its obligations under the agreement" (quoting *Finley*, ¶ 29). However, we understand this to be a conclusion that allowing the revocation proceedings to proceed would contravene the requirement of fairness in such proceedings, not a conclusion that the State had "deprived Mr. McDaniel of his property in the benefits of the written contract and administrative decision without procedural due process of law," as McDaniel now alleges in his Amended Complaint.

¶49 But even aside from our interpretations of the District Court's statements, McDaniel's argument fails due to the fact that he never raised a due process argument in his motions to dismiss. Rather, he argued "res judicata" in one motion and breach of contract in the other. "Due process" is nowhere to be found in either motion. Nor is "due process" mentioned in his proposed findings of fact and conclusions of law. As a result,

23

the State did not address the due process issue that McDaniel now claims was adjudicated in the District Court.

¶50 In sum, McDaniel's argument in relation to his procedural due process claim fails on the first and fourth elements of the issue preclusion test. It does not appear that the State's liability for a procedural due process violation was decided in the prior adjudication. More importantly, McDaniel's suggestion that the State was afforded a full and fair opportunity to litigate the procedural due process issue is not supported by the record. Accordingly, the District Court correctly denied his motion for partial summary judgment with respect to the State's liability on his due process claim—albeit, for the wrong reason. Nevertheless, we uphold a district court's judgment if the court reaches the correct result, regardless of the court's reasoning. *Peterson v. Eichhorn*, 2008 MT 250, ¶ 21, 344 Mont. 540, 189 P.3d 615.

## CONCLUSION

¶51 The State cannot prevail on a defense of prosecutorial immunity to McDaniel's breach of contract and procedural due process claims. Accordingly, the District Court erred in granting the State's motion for summary judgment.

¶52 McDaniel is entitled under the doctrine of issue preclusion to judgment as a matter of law on the State's liability for breach of an enforceable agreement (the Intervention Hearing Agreement). The District Court therefore erred in denying his motion for partial summary judgment on his breach of contract claim.

¶53 However, McDaniel is not entitled by issue preclusion to judgment as a matter of law on the State's liability for deprivation of property without procedural due process of

law. Thus, the District Court correctly denied his motion for partial summary judgment as to his procedural due process claim.

¶54 Affirmed in part, reversed in part, and remanded for further proceedings.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS

Justice Jim Rice, dissenting.

¶55 I believe the Court's opinion is flawed analytically, with the unfortunate result being, both here and in the future, that the State will be exposed to civil liability for actions taken by its prosecutors pursuant to discretion specifically provided to them by law, and for which immunity has been granted.

¶56 In my view, the Court has constructed a complicated framework to reach conclusions which embrace the facts on one hand, and turn from the reality of those facts on the other. For purposes of establishing liability, the Court holds that the breach of contract was the determination "to initiate a formal revocation hearing" by the "Deputy Flathead County Attorney [who] was acting as an agent of the State of Montana when he

25

filed the petition to revoke." *Opinion*, ¶¶ 15, 36.  Thus, the State is liable because its agent, the prosecutor, filed a proceeding in breach of the contract.  However, for purposes of immunity, the Court insists that McDaniel's claims "are not premised on any notion that the prosecutor's act of filing the petition was wrongful in itself," and that it is "the failure of *the State itself* to perform the terms of its alleged contract."  *Opinion*, ¶ 21 (emphasis added).  In the Court's view, the State is not acting through its agent-prosecutor for purposes of immunity and prosecutorial immunity may therefore be bypassed.  Thus, under the Court's analysis, the wrongful act by the agent which created the liability of the principal has been transformed for immunity purposes into an act which, first, was not actually wrongful, and second, did not legally involve the agent.  I believe this is a faulty analysis on several grounds.

¶57     The Court reaches these conflicting conclusions by reasoning that because "the State's agents were not parties to the alleged contract . . . they cannot be liable to McDaniel for breaching."  This is premised upon the Court's assertion, made without citation to authority, that "there is no factual or legal basis for McDaniel to bring his contract-based claims against the Deputy County Attorney."  To the contrary, an agent's act in breach of the principal's contract may well be actionable against both the agent and the principal, even if the agent was not a party to the contract, because the principal for whom the agent acted was a party.  *See Crystal Springs Trout Co. v. First State Bank*, 225 Mont. 122, 129, 732 P.2d 819, 823 (1987) ("an agent is jointly and severally liable

27

with his principal to third parties for wrongful acts committed in the course of his agency.") However, we need not resolve this joint liability issue to decide this case.

¶58    Although liability and immunity are different concepts, nonetheless, the State here acted only by way of its agent, and could not have acted without its agent. The Court's assertion that "the State itself" breached the contract is simply not true. The State did not "act by itself." Had the prosecutor not acted, there would have been no breach of contract. Thus, only by accepting McDaniel's creative, yet impossible allegation that the State acted without an agent can the Court conclude that the State must stand apart from its agent for immunity purposes. There is no authority for this proposition and it is legal fiction.[1]

¶59    Refocusing on what I believe is the factual reality of this case, McDaniel sued the State because the Deputy County Attorney initiated a prosecution against him, which breached the contract. Neither party disputes that the prosecutor was acting as an agent of the State and within the scope of his duties when he filed the petition to revoke against McDaniel. As the Court correctly states, "the terms of the agreement were breached" when "the State initiated a formal revocation hearing." *Opinion*, ¶ 36. In other words, the "act" which forms the basis of McDaniel's complaint was committed by a State agent pursuant to the prosecutorial discretion afforded to him by law.

---

[1] The Court also classifies the State's argument as one for "derivative immunity," which the Court discusses at length and then dismisses. However, this is a "straw man" analysis. For the reasons explained herein, there is no need for the State to seek derivative immunity, and it has not.

¶60  Regarding immunity for this act, we have held that a prosecutor is "absolutely immune from civil liability" when he acts within the scope of his duties. *Rosenthal v. Co. of Madison*, 2007 MT 277, ¶ 29, 339 Mont. 419, 170 P.3d 493. Notably, we did not qualify the immunity by holding that prosecutors are immune from "civil tort actions," but rather from "civil liability" generally and absolutely, a broader definition. Further, we stated that initiating prosecutions and dismissing complaints are precisely the sorts of actions prosecutorial immunity was designed to cover. *Rosenthal*, ¶ 29.

¶61  A proper analysis of this case would determine whether immunity defeats McDaniel's suit under the Supreme Court's "functional analysis." *Rosenthal*, ¶ 29 (citing *Imbler v. Pachtman*, 424 U.S. 409, 429-30, 96 S. Ct. 984, 994 (1976)). "This approach examines the nature of the functions with which a particular official or class of officials has been lawfully entrusted, seeking to evaluate the 'effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions.'" *Steele v. McGregor*, 1998 MT 85, ¶ 15, 288 Mont. 238, 956 P.2d 1364 (quoting *Forrester v. White*, 484 U.S. 219, 224, 108 S. Ct. 538, 542 (1988)). "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Forrester*, 484 U.S. at 227, 108 S. Ct. at 544 (emphasis added). The judicial lens should focus upon the actions taken by the governmental agent, not the type of suit brought by the claimant, the political subdivision selected by the litigant, or any other crafty pleading technique. *Imbler*, 424 U.S. at 429-30, 96 S. Ct. at 994-95; *see also Burns v. Reed*, 500 U.S. 478, 486, 111 S. Ct. 1934, 1939 (1991); *Westfall v. Erwin*, 484 U.S. 292, 296 n. 3,

29

108 S. Ct. 580, 583 n. 3 (1988); *Culpepper v. Smith*, 792 S.W.2d 293, 300 (Ark. 1990) (holding the only condition to applying the immunity to prosecutors is the determination of whether the acts complained of were acts committed within the scope of their prosecutorial duties).

¶62    Clearly, the prosecutor's filing of the revocation action was functionally within the scope of his normal duties.  However, the Court has mistakenly focused on the distinction between contract and tort claims, instead of on function.  Any breach of the Intervention Hearing Agreement at issue here occurred singularly because the Flathead County Deputy Attorney exercised his discretion by filing a petition for revocation of McDaniel's sentence.  As a prosecutor acting within the scope of the duties he is charged with administering, his actions are absolutely immunized from civil liability.  This common, virtually daily prosecutorial task of filing a petition to revoke should not expose the State to civil liability.

¶63    Once the challenged acts are functionally determined to be within the scope of the prosecutor's duties and immunized, immunity likewise extends to the State.  *State ex. Rel. Dept. of Justice v. Dist. Ct.*, 172 Mont. 88, 560 P.2d 1328 (1976).  The Court's suggestion that such an extension in this case could only occur through "derivative immunity" is not correct, given a proper application of the function analysis.  In *Dept. of Justice*, we held that the doctrine of prosecutorial immunity must encompass the State as well as the prosecutor:

> The public policy which requires immunity for the prosecuting attorney *also requires immunity for both the state and the county* for acts of judicial

30

and quasi-judicial officers in the performance of the duties which rest upon them; otherwise, the objectives sought by immunity to the individual officers would be seriously impaired or destroyed.

*Dept. of Justice*, 172 Mont. at 92, 560 P.2d at 1330 (emphasis added) (quoting *Creelman v. Svenning*, 410 P.2d 606, 608 (Wash. 1966)). Thus, the State may raise the defense of prosecutorial immunity to shield itself from liability against claims founded upon the discretionary acts of a prosecutor within the scope of his duties.

¶64 The Court has concluded, without the aid of primary authority, that the Deputy County Attorney must first be personally liable before the State can assert co-extensive immunity. *See Opinion*, ¶ 20 ("For the State to 'extend' . . . immunity to itself, the State must first establish that the Deputy County Attorney could raise prosecutorial immunity."). However, in addition to the contrary principles discussed above, we declined a similar proposition made in *Koppen v. Board of Med. Examrs.*, 233 Mont. 214, 759 P.2d 173 (1988). Justice Sheehy's separate opinion in *Koppen* took the position that:

> No question is presented in this case that relates to the *personal liability* of the Board members who allegedly failed to act . . . . When there is no risk of personal liability for damages to the government officials involved, the reason for common law official liability evaporates.

*Koppen*, 233 Mont. at 221, 759 P.2d at 177. The Court was not persuaded that immunity should only apply when Board members are subject to personal liability, holding that "the quasi-judicial immunity afforded to the Board must encompass the State. The Board's discretion would be equally subject to distortion by considerations of possible litigation against the State arising from its actions." *Koppen*, 233 Mont. at 220, 759 P.2d at 176.

31

¶65     I believe the Court's analysis further errs by its application of § 18-1-404(1)(a), MCA, on which the Court premises the State's liability for breach of contract. This provision is from Title 18, the public contracting section of the Code, which regulates "resident bidders" and "nonresident bidders," contracts for "goods," and "construction, repair and public works," "hiring preferences," "bid security," "contracting entities," "advertisement for bids," "forfeiture of contracts," "prepayment of public contractors," and such like. This statute has nothing to do with the criminal proceeding out of which McDaniel's claim arises, but is a civil statute. We have previously said that "[t]his individual statute may not be read and properly understood in a vacuum." *Peretti v. State*, 238 Mont. 239, 244, 777 P.2d 329, 332 (1989). Section 18-1-404, MCA, was enacted as part of "An Act Permitting Action on Express Contracts Against the State of Montana and Describing the Practice and Procedure Thereof." *Peretti*, 238 Mont. at 245, 777 P.2d at 333. It provides "[t]he state of Montana is liable in respect to any contract entered into in the same manner and to the same extent as a private individual under like circumstances, except the state of Montana is not liable for punitive damages." Section 18-1-404, MCA. Beyond having never been previously applied to claims arising out of the criminal law context, the plain wording of the provision demonstrates the Court's use is improper. Under what "like circumstances" could a private individual ever enter a contract to defer prosecution of a criminal offender? More critically, it is error for the Court to hold that § 18-1-404(1)(a), MCA, constitutes a waiver of prosecutorial immunity, when the provision does not even come close to doing so by its terms. "As

32

with prosecutorial immunity, quasi-judicial immunity is not a subject of Montana statutory law. . . . where the law is not declared by statute, the common law shall be the rule of a decision." *Koppen*, 233 Mont. at 218, 759 P.2d at 175. However, under the Court's holding, this statute has effectuated such a waiver of prosecutorial immunity.

¶66 Though we have applied contract law generally in interpreting agreements concerning criminal defendants, intervention, plea, and other agreements are not conventional obligations, and we have never concluded that they would support a separate civil cause of action for damages upon a breach, consistent with the law generally in that regard. *See* 17B C.J.S. *Contracts* § 600 (1999); *Lewis v. La.*, 602 So. 2d 68, 75 (La. App. 1992). The intervention agreement is part of Montana's Criminal Procedure, Title 46, MCA. Could the State civilly sue a defendant for breach of contract for breaching a plea agreement, and collect damages? Under the Court's reasoning, it apparently could be done.

¶67 Finally, the Court reasons that because application of prosecutorial immunity would affect the same result as sovereign immunity, it should similarly be disposed, citing the sovereign immunity cases of *Orr* and *Peretti*. *Opinion*, ¶ 23. However, though prosecutorial immunity and sovereign immunity may reach a functionally equivalent result, these two immunities are distinct concepts supported by separate policy rationale. *Dept. of Just.*, 172 Mont. at 92, 560 P.2d at 1330. Sovereign immunity, or governmental immunity, stems from a state's classification as a sovereign entity. It prevents citizens from suing a state absent its consent regardless of the type of harm claimed.

33

*Kawananakoa v. Polyblank*, 205 U.S. 349, 353, 27 S. Ct. 526, 527 (1907) ("there can be no legal right as against the authority that makes the law on which the right depends").

Unlike sovereign immunity, which is premised upon a state's status, prosecutorial immunity depends upon the actions the prosecutor took when the alleged harm occurred, and applies only to acts committed within the scope of a prosecutor's official duties. *Imbler*, 424 U.S. at 422-23, 96 S. Ct. at 991. We have cited and relied upon important policies supporting prosecutorial immunity, noting the potential influence upon a prosecutor's decision-making was precisely the catalyst for the adoption of prosecutorial immunity. As the Supreme Court stated over thirty years ago:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grant jurors acting within the scope of their duties. These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

*Imbler*, 424 U.S. at 422-23, 96 S. Ct. at 991. The reason for extending immunity to public officials such as prosecutors and judges is not for the protection or benefit of a malicious or corrupt official, but for the benefit of the public, whose interest is that officials should be at liberty to exercise their functions with independence and without fear of retribution. *Pierson v. Ray*, 386 U.S. 547, 553-54, 87 S. Ct. 1213, 1218 (1967).

¶68 The Court's decision today conflicts with these important policy considerations. As a practical consequence, prosecutors will now need to consider the potential for

34

claims which could be brought against the State because of their actions—even those within the normal scope of their prosecutorial duties.

¶69    I would affirm the District Court's order dismissing McDaniel's complaint and awarding summary judgment to the State on the grounds of prosecutorial immunity. I would not reach Issue Two.


/S/ JIM RICE


Justice John Warner joins in the dissent opinion of Justice Jim Rice.

/S/ JOHN WARNER

35